Peter J. MINIEL a/k/a Peter Hernandez, Appellant,

v.

The STATE of Texas, Appellee.

No. 70733.

Court of Criminal Appeals of Texas, En Banc.

Jan. 22, 1992.

Rehearing Denied April 15, 1992.

Robert A. Rodriguez, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Kimberly Aperauch Stelter and Ira Jones, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

OVERSTREET, Judge.

In October of 1988, appellant was convicted, in the 337th Judicial District Court of Harris County, Texas, of capital murder pursuant to TEX.PENAL CODE ANN. § 19.03(A)(2) (Vernon Supp.1986). After the jury returned affirmative answers to the special issues submitted pursuant to TEX.CODE CRIM.PROC.ANN. art. 37.071 (Vernon Supp.1988), the trial judge assessed punishment at death. On direct appeal, appellant raises nine points of error.[1]

## I. SUMMARY OF PERTINENT FACTS

Based upon testimony at trial from a co-defendant, the decedent's roommate, and police officers who witnessed appellant's electronically recorded oral confession, we observe that on May 8, 1986 appellant and the co-defendant drove to Galveston, Texas and met the decedent's roommate and another young man. The four young men discussed obtaining some marijuana and agreed to follow one another back to the Houston, Texas area for such purpose. After they arrived at decedent's (and his roommate's) apartment, marijuana was obtained and smoked. The decedent was at home when the group of four arrived and he took part in the smoking. Some of the group, including appellant and the decedent, also "shotgunned" beer.[2] Eventually the group wound down to appellant, his co-defendant, the decedent, and the decedent's roommate. In fact, the roommate had "passed out" and gone to sleep in his separate bedroom. Appellant's and his co-defendant's versions differ somewhat regarding who initiated the idea of robbery and who was primarily responsible for certain specific acts. The testimony, however, establishes that the two of them, at least in concert of mind, physically attacked the decedent and robbed him of his money, wallet and stereo audio equipment components. This physical attack consisted of at least one bash to the back of the head with a beer mug, several poundings about the head with a shock absorber, and multiple stabbings and cuttings with a knife (which according to the assistant medical examiner's testimony resulted in a total of 49 wounds). This attack caused the decedent's death. Decedent's roommate somehow managed to remain asleep in his separate bedroom during the attack. Appellant and the co-defendant left the apartment and eventually parted ways. Appellant was arrested on May 21, 1986, in Chicago, Illinois. (The co-defendant was arrested on May 22, 1986, in Brookshire, Texas.) Interviewed there by police, appellant made the above-mentioned oral confession. Some stolen stereo components were recovered in Chicago, while other components, and the knife used, were recovered in the Houston area.

## II. APPELLANT'S ORAL CONFESSION

Appellant's first two points of error deal with the voluntariness of his above-

---

1. We note that appellant has filed a pro se brief raising four additional points of error attacking the constitutionality of Article 37.071 and the effectiveness of his counsel in failing to make such an attack at trial. Because he is not entitled to nor has the absolute right to hybrid representation, we do not address those claims. *Scarbrough v. State,* 777 S.W.2d 83, 92 (Tex.Cr. App.1989); *Rougeau v. State,* 738 S.W.2d 651, 666 (Tex.Cr.App.1987); *Landers v. State,* 550

S.W.2d 272, 280 (Tex.Cr.App.1977) (Opinion on Rehearing).

2. The testimony indicates that this "shotgunning" involved shaking a can of beer, or poking a hole in the bottom to cause some sort of vacuum, and drinking the beer as it was forcefully ejected under high pressure out of the can into the mouth; thus the beer was sprayed down the throat.

mentioned oral confession. As noted previously, he was arrested in Chicago. This arrest was effected by several Chicago Police Department officers and two Houston homicide detectives. A pre-trial *Jackson v. Denno*[3] suppression hearing was held. Appellant claims that the confession was involuntary in that it was coerced by one of the Chicago officers "grabbing him by the balls," among other things. TEX.CODE CRIM.PROC.ANN. art. 38.21 (Vernon 1979) provides that a statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion. Obviously, appellant's claims aver compulsion and persuasion. Five police officers and appellant testified regarding the circumstances of the arrest and interrogation at the suppression hearing and those officers again testified before the jury at the trial on the merits.

Appellant's testimony at the hearing described his arrest as including being dragged barefoot and thrown around and involving the above-mentioned "ball grabbing," plus hair pulling, throat grabbing, profane language, racial epithets, and exhortations by one officer to not hit him in the face because pictures had to be taken. Appellant claimed that the interrogation took place in a very cold, tile-floored room at a police department substation. This interrogation purportedly involved a beating by one of the officers who had an object in his hand and kicks to the groin. Appellant testified that further interrogation included having him remove his pants and having his "balls" grabbed again with the officer informing him that he was "never going to have no [sic] babies." Appellant claimed that this caused him to almost pass out. He stated that the interrogation continued with orders from one of the Chicago detectives to cooperate and say whatever the other officers told him to say or that he "wouldn't make it." This Chicago officer also purportedly explained that the rationale for the beating was because the "dumb" Texas officers did not know how to do things right as they did in Chicago.

Two Houston detectives arrived in the interrogation room shortly after the alleged beating. Appellant then proceeded to talk with them and give them a statement which was electronically recorded. He claims that the only reason he gave the statement was because of fear of the Chicago police. In fact, he claims that the Houston detectives even said that they could leave and go get the Chicago officers back if that's what he wanted. He also claims that the Houston detectives failed to warn him of his *Miranda* rights and refused his request to talk to a lawyer. The purportedly brutal Chicago officer allegedly still made his presence felt by returning to the room and asking if there was a problem; whereupon after being reassured by the Houston officers that there was not, he left. Though appellant admitted that the officers did not write out a script for him to read, appellant claimed that he was supposed to say what the officers wanted him to say. He consistently maintained that the only reason he made the statement was because of the physical abuse by the Chicago officers and that he did not have any choice but to make it. The police officers' testimony disputed appellant's claims.

At the suppression hearing, after appellant had testified regarding the claimed coercion, the two Houston detectives and three of the Chicago officers unequivocally testified in rebuttal that there had been no such coercion or abuse. They acknowledged that appellant was handcuffed to a ring on the wall in the interview room. A photograph was also introduced which showed appellant standing shirtless immediately after the interrogation and confession. We note that while at various times appellant's attorney seemed to decry the presence of pants obscuring any potential marks of abuse below the waist, the photograph does not indicate that appellant had been the recipient of the claimed brutality.

Specifically, point of error number one alleges reversible error "in failing to suppress pretrial" the tape recorded statement because it was given involuntarily. Point

**3.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908      (1964).

number two avers reversible error "in failing to suppress pretrial" appellant's oral statements made while in custody on the grounds that such had been given involuntarily.[4] The gist of both points is that there was reversible error in failing to suppress testimony regarding appellant's statements made while in custody, both recorded and otherwise, because such were involuntary. Regarding point one, we note that the record reflects that the complained of tape recorded statement was never offered or admitted into evidence at the trial on the merits.[5] However, the officers' testimony at trial regarding appellant's admissions to them appears to have, at least in part, been based upon the challenged recorded statement, even though not specifically explicating that they were basing it upon such. Therefore, we reject the State's contention that the trial court's ruling on the motion to suppress the recorded statement was irrelevant.

■ It is axiomatic that the trial court is the sole judge of the credibility of the witnesses as well as the weight to be given to their testimony at a hearing on the voluntariness of a confession. *Pyles v. State,* 755 S.W.2d 98, 111 (Tex.Cr.App.1988), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *Moon v. State,* 607 S.W.2d 569, 570 (Tex.Cr.App.1980). The trial court filed findings of fact on the issue of the voluntary nature of the challenged confessions. Said findings held that appellant's oral confessions were not made under the influence of threats of violence, either direct or implied, and were given knowingly, intelligently, freely and voluntarily without any threats, compulsion, persuasion, duress, coercion or other improper influence. Obviously, the trial court chose to believe the five police officers rather

than appellant. Absent an abuse of discretion, the trial court's findings will not be disturbed. *Jacobs v. State,* 787 S.W.2d 397, 400 (Tex.Cr.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 231, 112 L.Ed.2d 185 (1990). After reviewing the record of the suppression hearing, viewing the above-mentioned photograph and listening to the two audio-tapes of the confession, we conclude that there was sufficient evidence to support the finding of voluntariness and find no error in the refusal to suppress appellant's oral statements.[6] Accordingly, we overrule points of error numbers one and two.

## III. JURY CHARGE INSTRUCTIONS

Appellant's third, fourth, and fifth points of error relate to the jury charge at guilt/innocence. A careful review of the record fails to reveal any such instrument. The record does contain a notarized sworn statement from the Harris County District Clerk's Office which details efforts to locate such instrument but which finally avers that "[t]he Court's charge as to guilt-innocence has inadvertently been misplaced" and "cannot be located." Since the statement of facts affirmatively reflects that the trial court did in fact overrule the jury instructions which appellant requested and which are the subject of these three points of error, and the State does not dispute that they were not included in the jury charge[7], we shall address these points.

■ Point of error number three claims reversible error in failing to instruct the jury on the voluntariness of appellant's in-custody statements where there was some evidence presented to the jury that the

4. Appellant seems to be distinguishing between the audio-tape recorded statement and an oral statement made immediately prior thereto which was not recorded. Apparently, the general content of both was the same.

5. Actually, the complained of "tape" consists of *two* audiotapes; the original and a duplicate which attempted to filter out acoustical noise. These tapes were indeed admitted into evidence before the court at the *Jackson v. Denno* hearing.

6. We additionally note that it appears from the record that TEX.CODE CRIM.PROC.ANN. art. 38.22 § 3(a)(b)(c) (Vernon Supp.1988) was wholly complied with and such is not attacked on appeal.

7. In fact, the State explicitly states in its brief that it "does not contest appellant's assertion that the charge did not include an instruction" which is the subject of point number three.

confession was not voluntarily made. The record does include appellant's written requested instruction of such, pursuant to TEX.CODE CRIM.PROC.ANN. art. 36.15 (Vernon Supp.1988), and the trial court's denial thereof. Appellant readily admits that he was entitled to such an instruction only if the evidence before the jury raised an issue as to the voluntariness of appellant's statements. TEX.CODE CRIM. PROC.ANN. art. 38.22 § 6 (Vernon 1979) provides that in all cases where a question is raised as to the voluntariness of a statement of an accused and upon a finding by the judge as a matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed that unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose or any evidence obtained as a result thereof. Section 7 adds that when the issue is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement. TEX. CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.1988) provides that in any case where the legal evidence raises an issue regarding whether evidence was obtained in violation of the laws of Texas or the United States, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation thereof, then the jury shall disregard any such evidence so obtained.

Appellant did not testify at the trial on the merits before the jury or call any witnesses on the issue of voluntariness of the confession. Five police officers (the same two from Houston and three from Chicago who had testified at the *Jackson v. Denno* hearing) did testify regarding appellant's arrest and subsequent interrogation. Again, all five testified that there was no abuse, brutality or coercion involved. In spite of vigorous cross-examination, they all denied that any beating or grabbing of appellant's testicles took place. Absolutely no one testified before the jury that any abuse occurred.

Appellant acknowledges that there is no error in refusing to include his requested jury instruction when there is no evidence before the jury to raise the issue. *Green v. State,* 682 S.W.2d 271, 296 (Tex.Cr.App. 1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985); *Jernigan v. State,* 661 S.W.2d 936, 942 (Tex.Cr.App. 1983), *cert. denied,* 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 368 (1983); *Hughes v. State,* 562 S.W.2d 857, 863 (Tex.Cr.App. 1978), *cert. denied,* 439 U.S. 903, 99 S.Ct. 268, 58 L.Ed.2d 250 (1978). However, appellant claims that there was evidence which sufficiently raised the issue by the following cross-examination sequence of *one* of the officers:

Question: Do you know it's contended by the defendant that Peterson beat him up?

Answer: That's what I've heard, yes, sir. . . .

Question: You also know that the defendant contends that Peterson beat him up and told him that he was going to do what y'all wanted?

Answer: That's what I was advised, yes, sir.

The State failed to object to the above questions and answers. Appellant now claims that "[b]oth the State and the trial court ignored, or simply forgot, [that officer's] testimony on cross-examination." (Apparently, appellant did the same thing since he did not mention that testimony when complaining about the jury charge at trial.) Prior to the charge being read to the jury, appellant specifically objected to exclusion of an instruction on voluntariness of the confession and that "the defendant feels that there was sufficient evidence raised in the facts of this case to submit such charge to the jury." Appellant submitted a written requested instruction. The State claims that since appellant never pointed out to the trial court the statements that he now claims sufficiently raised the voluntariness issue he is precluded from raising such claim on appeal. We disagree with the State and find that appellant sufficiently made his objection and request and preserved his claim of alleged error. However, we find that the evidence

does not raise the issue of voluntariness to mandate the requested jury charge instruction.

■ Evidence presented by the State in anticipation of an attack upon the voluntariness of a confession does not put voluntariness in issue. *Brooks v. State*, 567 S.W.2d 2, 3 (Tex.Cr.App.1978). Only when some evidence is presented that a confession is not voluntary is the matter put in issue. *Id.* Absolutely none of the witnesses' testimony could be construed as indicating that the confession was involuntary. We hold that the aforementioned cross-examination sequence did not present evidence raising the issue of voluntariness of the confession, therefore there was no error in refusing appellant's requested instruction. Accordingly, we overrule point number three.

Points of error numbers four and five raise State and Federal grounds for the trial court's failure to instruct the jury on the lesser included offense of murder. Again, while the jury charge is absent from the record, the statement of facts does reflect that appellant orally objected to the lack of "a charge on first-degree murder." He stated that he "would like to submit it in writing."

■ Point number four specifically avers that the trial court committed reversible error in overruling appellant's request for an instruction on the lesser included offense of murder. Appellant claims that murder is a lesser included offense of the indicted capital murder because murder does not require a specific intent to kill where the actor acts intentionally or knowingly to commit serious bodily injury or death, or commits an act clearly dangerous to human life, while "capital murder requires the specific intent to commit murder." He claims that this difference in the culpable mental state mandated a lesser included instruction.

■ It is well-settled that a lesser included offense instruction must be given if: 1) the lesser offense is included within the proof necessary to establish the offense charged, and 2) there is some evidence in the record that if the defendant is guilty he is guilty only of the lesser offense. *Baldree v. State*, 784 S.W.2d 676, 687 (Tex.Cr. App.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 521 (1990). While it is obvious that the first part of the analysis has been met, part two is subject to dispute. Appellant claims that the testimony at trial concerning his statements to police presented evidence that he never had the intent to kill the decedent but rather only intended to rob him.[8] The State asserts that "all the evidence introduced at trial indicates that appellant intended to kill *and* rob [emphasis added]" the decedent. Appellant's indictment alleged capital murder by intentionally causing death while in the course of committing and attempting to commit robbery. Succinctly, appellant's claims aver that there was evidence before the jury that if he was guilty he was guilty only of murder because during the course of the robbery he lacked the requisite specific intent to kill, having merely had the scienter to rob; i.e., that since he did not intend to cause death, he could not be guilty of capital murder.

Three people testified at trial regarding appellant's intent to kill; his co-defendant and the two Houston detectives who witnessed his oral statements. The co-defendant placed most of the blame for the killing on appellant. He testified that appellant had initiated the idea of robbing the decedent and had struck the first blows, several strikes to the back of the head with a beer mug. He also testified that appellant hit the decedent in the head several times with a shock absorber, and proceeded to stab him "around 15, 20, 30 times" because "[the decedent] didn't look like he was dying." He claimed that appellant then directed him to hold decedent down while appellant tried to cut the decedent's throat by puncturing it, but was not wholly

---

**8.** Actually, appellant more specifically refers to his audiotaped statements; however, said tapes were never offered or introduced into evidence at trial.

successful because the knife was dull.[9] Finally, he claimed that appellant tried to stuff the corner of a blanket down the decedent's throat "to stop him from breathing so he would die." The co-defendant explained that appellant wanted the decedent dead "[s]o he could rob him, take his money." The Houston detectives testified that appellant, while claiming that the co-defendant had initiated the idea of killing, admitted that he himself had wanted the decedent to be killed because he "did not want anybody pointing the finger at him in the courtroom." The detectives also testified that appellant told them that after the co-defendant stabbed the decedent 30 to 40 times, they couldn't believe that the decedent was still moaning and wouldn't die, so appellant took the knife from his co-defendant and stabbed the decedent about ten more times. (Apparently, appellant told the officers that it was the co-defendant who used the shock absorber and finally stopped the decedent's movements and moaning.)

We reiterate that to merit a charge on a lesser included offense there must have been evidence that appellant, if guilty, was guilty only of the requested lesser included offense, i.e., murder. *Creel v. State,* 754 S.W.2d 205, 213 (Tex.Cr.App.1988). As the above detailed testimony reveals, there was no evidence which indicated such. In fact, appellant does not cite to any location in the record of the trial on the merits which supports his position. The testimony does not indicate that appellant did not have the requisite intent to kill the decedent. Thus, we find that the trial court did not err in refusing to include in the jury charge an instruction on the lesser included offense of murder. Accordingly, we overrule point number four.

■ Point number five specifically avers that the trial court committed reversible error under Federal law in failing to instruct the jury on the lesser included offense of murder. Appellant cites *Cordova v. Lynaugh,* 838 F.2d 764, 770 (5th Cir. 1988), *cert. denied,* 486 U.S. 1061, 108 S.Ct.

2832, 100 L.Ed.2d 932 (1988) for that proposition. *Cordova* reversed a Texas capital murder conviction because of the failure to include a requested jury charge instruction on the lesser included offense of murder where the evidence would have permitted the jury rationally to find that defendant guilty of the lesser offense and acquit him of the greater. It further held that due process and the Eighth Amendment of the United States Constitution "require that, in a capital case, the jury must be allowed to consider a lesser included noncapital offense if the jury could rationally acquit on the capital crime and convict for the noncapital crime." *Cordova,* 838 F.2d at 767. Again, appellant reurges that the audio tapes of his in-custody statements to police, which were never offered or introduced into evidence before the jury, "was sufficient to raise the issue to the jury that [he] did not intent [sic] to kill the complainant."

■ The Federal rule is that a lesser included offense instruction should be given if the evidence would permit a jury rationally to find a defendant guilty of the lesser offense and acquit him of the greater. *Hopper v. Evans,* 456 U.S. 605, 612, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367, 373 (1982). Due process requires that such an instruction be given *only* when the evidence warrants such an instruction. *Id.* at 611, 102 S.Ct. at 2052–53. Thus the jury's discretion will be channeled so that it may convict a defendant of any crime fairly supported by the evidence. *Id.* at 612, 102 S.Ct. at 2053. However, as detailed in our previous discussion of point of error number four, murder is not fairly supported by the evidence in the instant cause. The record provides no basis for a rational jury to acquit appellant of capital murder yet convict him of the lesser included murder; thus, we discern no constitutional deficiency in the trial court's failure to include jury charge instructions thereon. *Perillo v. State,* 758 S.W.2d 567, 575 (Tex.Cr.App. 1988), *cert. denied,* 492 U.S. 925, 109 S.Ct.

---

**9.** We note that the assistant medical examiner testified that the autopsy revealed 22 stab wounds to the decedent's neck, none of which penetrated deeply, or involved any of the vital organs therein such as the esophagus or windpipe.

3263, 106 L.Ed.2d 608 (1989). We therefore overrule point number five.

## IV. PUNISHMENT INSTRUCTIONS

█ Points of error numbers seven and eight allege reversible error in the trial court's failure to include instructions regarding intoxication as a mitigating factor in the jury charge at punishment. Fortunately, that instrument is included in the record before us. The record does not reflect that appellant requested such instructions in writing or dictated such to the court reporter pursuant to TEX.CODE CRIM.PROC.ANN. art. 36.15 (Vernon Supp.1988). We do observe that TEX. CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1988) provides that its requirement that objections to the court's charge be in writing will be complied with if the objections are dictated to the court reporter, and that compliance with its provisions is all that is necessary to preserve for review the exceptions and objections presented to the charge. Appellant's objection consisted of the following:

APPELLANT'S ATTORNEY: Judge, we have some requests to make out of the presence of the jury.

THE COURT: Okay. Retire the jury, please.

[Whereupon the following proceedings were held outside the hearing of the jury:]

APPELLANT'S ATTORNEY: Judge, based on the evidence that's been adduced by the Defense on the issue of punishment, we request a charge on mitigation to be submitted to the jury in addition to the charge which has already been prepared.

THE COURT: What, if anything, does the State have in that case?

THE PROSECUTOR: I don't understand what kind of mitigation they want, whether it's a voluntary-intoxication charge. A charge on mitigation? They're required to say specifically what they want.

THE COURT: What, in specific, counsel, are you driving at?

APPELLANT'S ATTORNEY: The jury has heard evidence of a change of attitude that would reflect on the answer as it relates to Question 2, and we request that such charge be given to the jury. It ought to be in the charge bank. It's a recent federal—I think Supreme Court of the United States case that suggests that if mitigating evidence is brought before the jury that the Court is required to issue a charge on it.

THE PROSECUTOR: Your Honor, I think he may be talking about *Frank Christian v. Texas*, a very recent Supreme Court holding, which challenges the Texas death-penalty statute in the penalty phase, saying that the two issues do not give the jury sufficient direction; that they should consider the mitigating circumstances, if any. That was the complaint made in that case to the United States Supreme Court. This was several months ago. The United States Supreme Court, in looking at the Texas statute, said that the Texas statute gives sufficient guidance to the jury to consider any mitigating factors, by the structure of their issues. They've put on everything they wanted to say, Your Honor. I have not made one objection to anything these people have said. We've let the hearsay come in and everything else. They've had their say, without objection. The Supreme Court has said the statute gives sufficient guidance as to whether or not they want to mitigate; they've heard it. They can do with it as they wish.

THE COURT: Did they have a final ruling on that?

THE PROSECUTOR: Yes, sir; they affirmed the Texas statute, again, which has opened the door now to—was regarded as the last impediment to stop executions. Those executions that have been held up are now no longer being held up. They are now in the process of giving them execution dates.

THE COURT: Anything further?

APPELLANT'S ATTORNEY: Just ask for a ruling. Are you going to give us a mitigation charge?

THE COURT: The Supreme Court ruling on that case *Franklin v. State,*—well, it's been affirmed.

APPELLANT'S ATTORNEY: Does that mean you're overruling my request to give the jury a charge on mitigation?

THE COURT: Overruled. Anything further? Anything further?

THE PROSECUTOR: Nothing further from the State.

APPELLANT'S ATTORNEY: Nothing further, Judge.

As is apparent from the above-described dialogue, appellant never made reference to the absence of an instruction regarding intoxication as mitigation. In fact, the one and only time the word "intoxication" was even mentioned was in the prosecutor's question seeking clarification as to what kind of mitigation instruction was being sought. Appellant then specifically responded without referring to intoxication, but stated that there had been evidence of a "change of attitude." We hold that appellant's request/objection at trial was not sufficient to apprise the trial court of the error which he now raises on appeal.

■ Point number eight avers that the trial court committed reversible error in failing to instruct the jury during the punishment phase of trial that intoxication can be a mitigating factor. In his brief, appellant refers to TEX.PENAL CODE ANN. § 8.04(b) (Vernon 1974) which provides that evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried. (TEX.PENAL CODE ANN. § 8.01(a) (Vernon Supp.1988) delineated insanity as an affirmative defense to prosecution if, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong.) We note that the only evidence of appellant's possible intoxication was the previously mentioned testimony about "shotgun-

ning" beer and smoking marijuana; there was no testimony specifying precisely how much of each was partaken by appellant. There was testimony that the reason they were "shotgunning" was to get drunk quicker. In *Cordova v. State,* 733 S.W.2d 175, 190 (Tex.Cr.App.1987), *cert. denied,* 487 U.S. 1240, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1988), we declined to hold that the mere presentation of evidence that an actor was intoxicated when he committed an offense automatically entitled him to a § 8.04(b) instruction at punishment.[10] In fact, more recently we have held that regardless of whether there is evidence to support an instruction concerning voluntary intoxication as mitigating evidence, there is no need to include such an instruction apprising the jury of such mitigating evidence and how to use it. *Havard v. State,* 800 S.W.2d 195, 207 (Tex.Cr.App. 1989). Therefore, failure to include such an instruction based upon § 8.04 in appellant's punishment jury charge was not error. We accordingly overrule point number eight.

■ Point number seven, similar to number eight, avers that the trial court committed reversible error in failing to give an instruction at the punishment phase of the trial, explaining to the jury how to incorporate mitigating evidence into the special issues, where appellant was intoxicated at the time of the alleged offense. Unlike point eight, his arguments under point seven allege that the evidence of intoxication was comparable to *"Penry* evidence" and that as such the jury was unable to properly apply the mitigating factor of intoxication in answering the special issues presented. *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) held that the special issues provided for by Article 37.071 of the Texas Code of Criminal Procedure unconstitutionally failed to allow a jury to fully consider and act upon particular mitigating evidence. That evidence, which fell outside the scope

10. *Sawyers v. State,* 724 S.W.2d 24, 33 (Tex.Cr. App.1986) approved of a prior opinion holding that, under an earlier § 8.01 definition of insanity, in order to avail oneself of the mitigation provision of § 8.04 a defendant must, as the

result of the intoxication, 1) not know his conduct was wrong; or 2) have been incapable of conforming his conduct to the requirements of the law he violated.

of the special issues, consisted of Mr. Penry's mental retardation and history of childhood abuse. *Id.* The United States Supreme Court has held that not all mitigating evidence falls outside the scope of these special issues. *See Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988); *Boggess v. State,* 1991 WL 87597 (Tex.Cr.App. No. 69,990, delivered May 29, 1991); *Black v. State,* 816 S.W.2d 350 (Tex.Cr.App.1991); *Ex parte Baldree,* 810 S.W.2d 213 (Tex.Cr.App.1991); *Ex parte Ellis,* 810 S.W.2d 208 (Tex.Cr. App.1991); *Boyd v. State,* 811 S.W.2d 105 (Tex.Cr.App.1991).

As noted previously when discussing point number eight, the only evidence of appellant's intoxication was the testimony about "shotgunning" beer and smoking marijuana. Appellant's punishment jury charge contained the special issues prescribed by TEX.CODE CRIM.PROC.ANN. art. 37.071 (Vernon Supp.1988), which required the jury to make findings regarding whether appellant's conduct was committed deliberately with the reasonable expectation that the death of the decedent or another would result and whether there was a probability that he would commit criminal acts of violence that would constitute a continuing threat to society.[11] Whether appellant's intoxication affected his conduct such as to effect whether or not that conduct caused the decedent's death deliberately and with the reasonable expectation that death would result was explicitly subject to the jury's consideration in answering special issue number one. No additional instruction was needed to direct the jury's attention to such. Such voluntary intoxication would not in any way diminish appellant's moral culpability or blameworthiness, and thus is not analogous to the determinative evidence presented in *Penry.* We therefore conclude that the evidence of appellant's intoxication was not *"Penry* evidence" so as to fall outside the scope of the submitted special issues; thus, the jury was able to consider and express its reasoned moral response thereto. Because there was no error in the failure to include an instruction explaining how to incorporate evidence of intoxication in answering the special issues, we overrule point number seven.

## V. PUNISHMENT EVIDENCE SUFFICIENCY

▇▇▇ Point of error number six avers that the evidence was insufficient to support the jury's finding on special issue number two that appellant would be a continuing threat to society. As noted earlier, special issue number two asked, "Is there a probability that the defendant, Peter J. Miniel, would commit criminal acts of violence that would constitute a continuing threat to society?" The jury unanimously found beyond a reasonable doubt that the answer was "Yes." Appellant claims that given the spur-of-the-moment nature of the attack upon the decedent, the fact that the decedent's roommate was not harmed, the "heavy drug usage" by all parties involved, and the intoxicated state of mind of appellant at the time of the offense, it cannot be said that the evidence supports a finding of "yes" to the second special issue beyond a reasonable doubt.

▇▇▇ The appropriate standard of appellate review of an attack upon the sufficiency of evidence to support a jury's finding on special issue number two is whether the evidence, when viewed in the light most favorable to the verdict, would lead any rational trier of fact to make the affirmative finding beyond a reasonable doubt. *Crane v. State,* 786 S.W.2d 338, 354 (Tex. Cr.App.1990); *Burns v. State,* 761 S.W.2d 353, 355 (Tex.Cr.App.1988); *Kunkle v. State,* 771 S.W.2d 435, 445 (Tex.Cr.App. 1986), *cert. denied,* 492 U.S. 925, 109 S.Ct.

11. These special issues read as follows:
   *Special Issue No. 1*
   Was the conduct of the defendant, Peter J. Miniel, that caused the death of the deceased committed deliberately and with the reasonable expectation that the death of the deceased or another would result?

*Special Issue No. 2*
   Is there a probability that the defendant, Peter J. Miniel, would commit criminal acts of violence that would constitute a continuing threat to society?

3259, 106 L.Ed.2d 604 (1989). It is well-settled that in deciding punishment, the jury may consider all of the evidence adduced at the guilt stage and that the circumstances of the offense itself, if severe enough, can be sufficient to sustain an affirmative finding to the second special issue.[12] *Stoker v. State*, 788 S.W.2d 1, 7 (Tex.Cr.App.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *Valdez v. State*, 776 S.W.2d 162, 167 (Tex. Cr.App.1989), *cert. denied*, 495 U.S. 963, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990). Of course, the jury is free to consider a great many factors when determining whether a defendant will pose a continuing threat to society.[13]

The severe circumstances of the instant offense, as noted previously during the discussion of other points, speak for themselves. We add that there was also testimony from the assistant medical examiner that the multiple neck wounds were consistent with a method of torture known as "juking." The State presented testimony from five witnesses during punishment while appellant presented three. Neither presented expert psychiatric or psychological evidence.[14] The State's witnesses included two Illinois prosecutors and two Illinois probation officers. They identified appellant as an individual who had been convicted and sentenced for the offenses of aggravated battery, unlawful use of weapons, disorderly conduct and retail theft, and who had a bad reputation for violence. There was also testimony that Illinois had an outstanding motion to revoke appellant's probation, alleging the commission of another aggravated battery which purportedly involved him beating his girlfriend with a motorcycle chain and a decorative wooden spoon. (Testimony indicated that the initial aggravated battery for which he was sentenced and placed on probation involved beating the same girlfriend with

"numchuks [sic]," a martial arts instrument.) An officer with the Humble, Texas Police Department testified that appellant's reputation for being peaceful and law-abiding and for being violent was bad. Appellant presented testimony from a Harris County Sheriff's Department jailer that he had no disciplinary problems while incarcerated pending trial. Appellant's two other witnesses, one of whom was an assistant chaplain at the Harris County Jail and the other who had been a prospective juror in this very case, testified about religious conversations that they had in visiting him in jail and his very regular attendance at voluntary worship services there. Appellant had tearfully related that while he was incarcerated God had changed his life. The assistant chaplain, who had many years of experience ministering to prisoners locally and in the Texas Department of Corrections, expressed the opinion that appellant's conversion was sincere and that he had "a true commitment to repent from his life."

There was also testimony before the jury that when arrested in Chicago, appellant had a loaded shotgun within arm's reach, and that shortly after he and his co-defendant had made their getaway he had pointed a shotgun in the general direction of his co-defendant and threatened to kill him for messing up and not doing anything right. In *Kunkle*, 771 S.W.2d at 449, we said that we must first look at the facts of the crime itself and if the offense is shown to be sufficiently cold-blooded or calculated, then the facts of the offense alone may support a finding that the defendant will pose a continuing threat to society. However, if the facts of the case are not sufficiently compelling, we must look for other evidence to support the jury's finding. After making such an examination, we hold that the evidence adduced at trial was quite

12. At punishment, the State did offer into evidence "all the testimony, evidence, and exhibits admitted by th[e] court in the first phase of the trial."

13. From our review of the record it does not appear that anyone testified as to appellant's age or date of birth.

14. We note that the prosecutor did read into the record that the State had anticipated calling a particular doctor as a witness, but that the doctor's wife died over the weekend and it was not possible for him to appear. The prosecutor added that there was another named doctor who might be called in rebuttal.

sufficient to support the jury's finding on special issue number two and we therefore overrule point six.

## VI. INEFFECTIVE ASSISTANCE

■ Point of error number nine avers that appellant's conviction should be reversed on the basis of ineffective assistance of counsel because his trial attorneys failed to vigorously cross-examine the State's key witness and failed to argue intoxication as mitigating evidence to the jury. (Within the body of his brief, appellant also claims ineffectiveness in failing to object to two purportedly improper jury arguments by the State at guilt/innocence and in failing to request a punishment jury charge instruction on intoxication as mitigation.) Our standard of review of such a claim in a capital murder setting is based on the dictates of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Black v. State*, 816 S.W.2d 350 (Tex.Cr.App.1991); *Hernandez v. State*, 726 S.W.2d 53 (Tex.Cr.App.1986). To establish his ineffectiveness claim, appellant must show: 1) that counsel's representation fell below an objective standard of reasonableness, and 2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; with that reasonable probability being a probability sufficient to undermine confidence in the outcome. *Derrick v. State*, 773 S.W.2d 271, 273 (Tex.Cr.App.1989), *cert. denied*, 493 U.S. 874, 110 S.Ct. 209, 107 L.Ed.2d 162 (1989).

■ The right to counsel affords a defendant an attorney reasonably likely to render and rendering reasonably effective assistance rather than errorless counsel whose competency is judged by hindsight. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex.Cr.App.1991). Counsel's competence is presumed and a defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 2588, 91 L.Ed.2d

305, 325 (1986). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making such evaluation we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance i.e., the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

■ Appellant avers that his principal complaint of his counsel's performance during guilt/innocence was "the failure to subject [the co-defendant] to *any* cross-examination." (Emphasis in original.) As noted above in discussing other points of error, this co-defendant testified in detail about the facts and circumstances of the instant offense and implicated both himself and appellant. Appellant claims that in his tape-recorded statement, which was never played before the jury, he indicated that the co-defendant had it in for him and that there was some dispute between them over appellant's being seduced by the co-defendant's ex-girlfriend. He also questions the co-defendant's precise role in the homicide. Appellant claims that these areas should have been explored via cross-examination and that "[t]he jury was entitled to hear the answers, regardless of what the answers would have been, in measuring the credibility and demeanor of [the co-defendant]." The record reflects that after the State concluded direct examination of the co-defendant, appellant's trial counsel asked a few questions regarding the co-defendant's arrest and any written statements. Then appellant's counsel proceeded to examine the written statement. The jury was then excused for "an afternoon break," whereupon their return appellant's counsel stated, "... at this time we pass the witness back to the State, reserving the right for later complete, full, and thorough cross-examination." After the State called

its final witness at guilt/innocence and declared that "[t]he State rests," appellant's counsel had the jury retired and requested that the case be recessed until the next morning so that the transcribed testimony of the co-defendant could be obtained. Counsel further stated, "We plan to go forward with the cross-examination of him that we did not do but did not waive, with no objection from the State...." After the State commented that appellant should have cross-examined prior to it resting, appellant's counsel stated, "We're going to call [the co-defendant]. We want his testimony available for us before we do it," and "We just want [the co-defendant] back on the stand, with his testimony available to use." The trial court proceeded to recess the proceedings until the next morning.

The next morning, counsel for appellant stated that "... by and through his attorneys of record, ..., and, after a discussion with the defendant and discussing the matters of the case, the procedures, the evidence, and so forth—I understand that the State has rested.... At this time we would rest. I'd just like to notify the judge before we do it in front of the jury that the defendant chooses not to testify nor to put on any evidence; so we would rest our case, yes, sir." When the jury was brought into open court, counsel stated that "[at] this time, Judge, the Defense will rest behind the State." This entire sequence of events indicates that there was some contemplation by counsel of cross-examining the co-defendant. Apparently something happened overnight, which would seem to have included "discussion with the defendant," led them to decide not to cross-examine the co-defendant. It has been said that "[o]ften, the decision to not cross-examine a witness is the result of wisdom acquired by experience in the combat of trial." *Coble v. State*, 501 S.W.2d 344, 346 (Tex.Cr.App.1973). In light of the totality of trial counsel's representation, in-

cluding cross-examination, with varying degrees of rigor of seven of the nine police witnesses (including all five who had been involved in the previously discussed suppression hearing) and the assistant medical examiner, we do not view counsel's treatment of the co-defendant as outside the prevailing norm of sound trial strategy.[15]

■ Appellant next claims ineffectiveness by trial counsel in failing to object to two jury arguments at guilt/innocence. The first consisted of a comment that a shock absorber entered into evidence had appellant's fingerprints on it, when in reality the fingerprint expert testified that no suitable fingerprints had been recovered from it. The second involved comments that appellant did not even cross-examine the co-defendant "because it put him right there in the middle of it, guilty as sin," and if there had been something in that testimony that was not quite right, "the Defense would have been ranting and raving about it." Appellant alleges that his counsel's failure to object to these two arguments constituted ineffectiveness. While the prosecutor's misstatement of the evidence regarding fingerprints on the shock absorber was improper and would have been subject to an objection, even had such been erroneously overruled such error would certainly not have been reversible. *Phillips v. State*, 701 S.W.2d 875, 892 (Tex. Cr.App.1985), *cert. denied*, 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986). In light of the entire record, the same can be said about the argument referring to the lack of cross-examination of the co-defendant because a prosecutor's remarks during jury argument that may be reasonably construed as referring to a defendant's failure to present evidence through a witness other than himself does not require reversal. *May v. State*, 618 S.W.2d 333, 345 (Tex.Cr.App.1981), *vacated*, 454 U.S. 959, 102 S.Ct. 497, 70 L.Ed.2d 374 (1981), *aff'd as modified*, 632 S.W.2d 751 (Tex.Cr.App.

**15.** We note that counsel's jury argument at guilt/innocence vigorously attacked the co-defendant as being at least equally blameworthy as was appellant and pointed out that it was the co-defendant's knife that had been used. He also emphasized the fact that the co-defendant had been the beneficiary of a plea bargain agreement for a 50–year sentence for his part in the instant offense. In fact throughout his argument, he emphasized justice, equality, and fairness and closed by saying, "But I guess I'll do what I can do, as meager as it may be, to see that we have an equality in the assessment of punishment for those equally involved."

1982). We cannot conclude that the failure to object to the two complained of instances of argument, which would not have been reversible had error, if any, been preserved, constituted ineffective assistance.

Appellant finally claims ineffectiveness in failing to properly argue intoxication in mitigation of punishment.[16] He avers on appeal that "[t]he failure of counsel to pursue this avenue more fully with the jury cannot be attributed as a tactical decision." We disagree. We note that appellant's jury arguments at punishment focused upon the absence of fundamental fairness in the co-defendant's receipt of a plea bargained sentence. The fact that another attorney, including appellant's appellate counsel, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Hawkins v. State*, 660 S.W.2d 65, 75 (Tex.Cr.App.1983). Surely jury argument is an area in which many competent, able, and effective attorneys might disagree regarding the particulars of the presentation to a jury. We cannot hold that the absence of the jury argument which appellant on appeal insists should have been included in his trial on the merits constitutes ineffective assistance.

In viewing the totality of appellant's representation at trial, we hold that the assistance of counsel was certainly within the wide range of reasonable professional assistance and that the above-noted challenged actions could surely be considered sound trial strategy. Accordingly, we overrule point of error number nine.

Having reviewed all of appellant's points of error the judgment of the trial court is hereby affirmed.

McCORMICK, P.J., and CLINTON, CAMPBELL and BENAVIDES, JJ., concur in result.

---

16. He also cursorily alleges ineffectiveness in not requesting a punishment jury charge instruction regarding such; however, based upon our earlier discussion and conclusions regard- ing points of error numbers seven and eight we conclude that there was no ineffectiveness in failing to make such request because appellant was not entitled to such an instruction.