

## NUMBER 13-08-401-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

| CARLOS VALLES, | Appellant, |
|---|---|
| v. | |
| THE STATE OF TEXAS, | Appellee. |

### On appeal from the 117th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Vela**

Appellant, Carlos Valles, was indicted for two counts of aggravated sexual assault

of a child and two counts of indecency with a child by contact. *See* TEX. PENAL CODE ANN.

§ 22.021(a) (Vernon Supp. 2008), § 21.11(a)(1) (Vernon 2003). Pursuant to a plea

agreement, appellant pleaded guilty to the offenses and was placed on ten years' deferred-

adjudication community supervision. On August 4, 2006, pursuant to a motion to revoke,

the trial court imposed sanctions on appellant and modified his community supervision. On June 4, 2008, pursuant to a second motion to revoke, the trial court revoked appellant's community supervision, found him guilty of the four offenses, and sentenced him to twenty years' imprisonment for each offense, with the terms for each count to run concurrently. By one issue, appellant complains he was denied the right to effective assistance of counsel at the second revocation hearing because counsel failed to make an independent investigation concerning appellant's mental condition.[1] We affirm.

## I. BACKGROUND

A. *Revocation of Appellant's Community Supervision*

At the second revocation hearing held on June 4, 2008, appellant pleaded true to the allegations in the motion. With respect to his pleas of true, the trial court asked appellant:

> Q.    And is it also true that in contradiction of your conditions of probation that you, in effect, were with a minor female child on May 23rd, 2008, at T.G. Allen Elementary School; is that correct?
>
> A.    Yes, ma'am.
>
> Q.    So you violated both provisions, you shall have no contact with minor children under the age of 17, and you shall not enter or come within 1,000 feet of any school, and you violated both of those, is that correct?
>
> A.    Yes, ma'am.

After the trial court accepted appellant's pleas of true, defense counsel asked appellant why he went to the elementary school. He replied, "I just went in to go see my daughter and then from there I just left. I didn't even take not even five minutes." Appellant understood that going to the school and being with his daughter violated the conditions of

---

[1]The State did not file an appellate brief in this case.

2

his community supervision. He replied affirmatively when appellant's trial counsel asked him, "And you've had some problems in talking to me because you do have some MHMR history; is that correct?" After appellant testified, counsel told the court that he believed appellant was "competent," that appellant was "a little bit slow in getting concepts across," and that appellant had "been with MHMR for a couple of years."

B. *Hearing On Motion For New Trial*

After the trial, appellant's new attorney filed a motion for new trial, alleging in part that trial counsel was ineffective because he failed to determine appellant's mental condition prior to the second revocation hearing.

1. *Appellant's Evidence at the New Trial Hearing*

Appellant testified he was 34 years old and that when he was "younger," he was on social-security disability. He had attended school "[u]ntil 9th grade," but when he was in the ninth grade, he "was doing 2nd grade" work. He testified that "I just got to the 9th grade and then they just passed me to the 12th grade because of my age." At that time, he was twenty years old. Appellant testified he went to MHMR for almost a year and a half. At MHMR, he met with a psychologist and was given medication "for the voices that I was hearing and for other things and for my mind."

With respect to appellant's MHMR history, trial counsel testified[2] he: (1) knew

---

[2]On direct-examination, appellant's appellate counsel questioned trial counsel as follows:

Q.      Okay. And I believe that at some point during the hearing on the motion to revoke you were—or you made some mention to the Court . . . that you knew something of Mr. Valles' background with regards to some history that he had with M.H.M.R.?

A.      That's correct. When I first met him at the jail, the first thing he told me was that he was slow in understanding things, . . . .

        * * * *

Q.      Okay. Were you aware that in the original motion to revoke that I guess was filed back on July the 20th of 2006, that one of the conditions that Mr. Valles had was that

appellant "was slow in understanding things" and had MHMR history; (2) knew appellant

was required to attend the mental health specialized case load; (3) believed that appellant

---

he had to attend M.H.M.R., the mental health specialized case load; is that correct?

A.    Yes.

Q.    Okay. And in talking to him, what was your impression of him?

A.    When he tells that he is slow and that he has M.H.M.R. history, I try to slow down a little bit myself and make sure that I try to explain things so that the person understands it. I believe my conversations with him were always in English.

Q.    Okay.

A.    But I'm proficient in Spanish, so if he had any questions and wanted to ask me something in Spanish, I'm sure I could have addressed it at that time.

Q.    Did you at any time talk to the probation officer about his probation with regards to that condition, that he had to attend M.H.M.R.?

A.    Yes. I spoke with the probation officer on 5/29/08.

Q.    Okay.

A.    We discussed the case, what the allegations were, the fact that he was supposed to go to M.H.M.R. I believe, I don't recall specifically, but I think he had not been going to M.H.M.R., was my recollection.

Q.    Did you—were you able to find out or get any copies of any type of medical evaluations concerning his M.H.M.R. treatment?

A.    No.

Q.    Do you—did you ever find out what he was diagnosed with in order for him to be there at M.H.M.R.?

A.    No, I did not.

Q.    Were you aware of the fact that he was on some type of social security disability?

A.    Yes. I was.

* * * *

Q.    [Trial counsel], did you ever find out if he was on any type of medication while he was going to M.H.M.R.?

A.    I don't believe so, no.

Q.    Okay. Did he ever tell you that he had been on the medication?

A.    [H]e told me he was going to be—that he was being treated by the medical staff there at the jail, but I don't know the specific medications that he was taking.

4

was not going to MHMR; (4) did not obtain any copies of any medical evaluations concerning appellant's MHMR treatment; (5) did not find out what appellant was diagnosed with in order to receive MHMR services; (6) knew appellant had received social security disability; and (7) did not know what medication appellant was taking.

2. *State's Evidence at the New Trial Hearing*

Sydney Morris,[3] who had five and one-half years' experience supervising the mental-health case load, testified that "We have information from M.H.M.R. dated May of 2006, in which he [appellant] was given a diagnosis of a mental health disorder but however, he was noncompliant with the treatment guidelines and noncompliance [sic] with the medication prescribed to him by the psychiatrist." She stated that appellant "reported to us that he had a G.E.D." and that "he also indicated he wanted to go to Del Mar to get certification as a mechanic."

On cross-examination, Morris testified that appellant "was given an AXIS I diagnosis of bipolar disorder," which she described as a "mood disorder" and stated appellant "could have difficulty with his feelings. It is an affective disorder, so it affects his emotions." She testified that his disorder "could, in his attitude towards [his probation] conditions" have an affect on following some of the probation conditions. However, she stated that his disorder "would not necessarily affect his understanding of" his probation conditions. She said that the medications he was supposed to be taking were "Cymbalta, 30 milligrams; Depakote E.R., 500 milligrams and Respirol, 1 milligram."

---

[3]Sydney Morris did not specify her job title. Her testimony indicated that she worked for the community supervision department of Nueces County.

After hearing all of the testimony, the trial court stated on the record that "[A]s you know, the focus of the first [revocation] hearing[4] that we had dealt with the M.H.M.R. problem. . . ." The trial court denied the motion for new trial.

## II. Discussion

In his sole issue, appellant complains he received ineffective assistance of counsel at the second revocation hearing because counsel failed to make an independent investigation with respect to appellant's mental condition. Specifically, he asserts that had counsel "provide[d] any evidence of [his] mental health condition there is a reasonable probability that the Court would have handed down a reduced sentence or an alternative sentence."

### A. *Applicable Law*

Both federal and state constitutions guarantee a defendant the right to counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. "The right to counsel affords an accused an attorney 'reasonably likely to render and rendering reasonably effective assistance.'" *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991) (quoting *Cannon v. State*, 668 S.W.2d 401, 402 (Tex. Crim. App. 1984)). In analyzing claims of ineffective assistance of counsel, we apply the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984); *Ex parte Ellis*, 233 S.W.3d 324, 330 (Tex. Crim. App. 2007). Under this framework, appellant "must prove by a preponderance of the evidence that: (1) 'his counsel's performance was deficient'; and (2) 'there is a 'reasonable probability'—one sufficient to undermine confidence in the result—that the outcome would have been different but for his counsel's deficient performance.'" *Ex parte Ellis*, 233 S.W.3d at 330

---

[4]The appellate record does not include a transcript of the hearing on the first motion to revoke appellant's community supervision.

6

(quoting *Ex parte Chandler*, 182 S.W.2d 350, 353 (Tex. Crim. App. 2005)).

To establish deficient performance, appellant "must show that 'counsel was not acting as 'a reasonably competent attorney,' and his advice was not 'within the range of competence demanded of attorneys in criminal cases.'" *Id*. (quoting *Ex parte Chandler*, 182 S.W.3d at 354). Appellant "must overcome the 'strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.'" *Id*. (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). Therefore, appellant "must 'overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Id*. (quoting *Miniel v. State*, 831 S.W.2d 310, 323 (Tex. Crim. App. 1992)). "The reasonableness of an attorney's performance is judged according to the 'prevailing professional norms' and includes an examination of all the facts and circumstances involved in a case." *Id*. (quoting *Strickland*, 466 U.S. at 688). We "'must be highly deferential to trial counsel and avoid the deleterious effects of hindsight.'" *Id*. (quoting *Thompson*, 9 S.W.3d at 813).

Under the second prong of the *Strickland* analysis, appellant "must establish that the 'constitutionally deficient performance prejudiced his defense—that is, he must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Ex parte Chandler*, 182 S.W.3d at 354). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*. at 330-31 (quoting *Strickland*, 466 U.S. at 694). "When making this determination, any constitutionally deficient acts or omissions will be considered in light of the 'totality of the evidence before the judge or jury.'" *Id*. at 331 (quoting *Strickland*, 466 U.S. at 695).

7

When assessing the reasonableness of counsel's investigation, we "must consider the quantum of evidence already known to counsel and whether the known evidence would lead a reasonable attorney to investigate further." *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006) (citing *Wiggins v. Smith*, 539 U.S. 510, 527 (2003)). "'[C]ounsel has a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary. [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment.'" *Id*. (quoting *Wiggins*, 539 U.S. at 522-23).

B. *Punishment Evidence*

In *Wiggins v. Smith*, the United States Supreme Court granted federal habeas corpus relief based on trial counsel's failure to further investigate and put forth mitigating punishment evidence showing severe physical and sexual abuse suffered by Wiggins which counsel apparently knew about before trial. *Wiggins*, 539 U.S. at 515-16. "Under the test set forth in *Wiggins*, we must decide whether the actions taken by counsel in investigating [appellant's] background were reasonable, specifically, 'whether the investigation supporting counsel's decision not to introduce mitigating evidence of [appellant's] background *was itself reasonable*.'" *Ex parte Martinez*, 195 S.W.3d at 727 (quoting *Wiggins*, 539 U.S. at 523) (emphasis in original). "A failure to uncover and present mitigating evidence cannot be justified as a tactical decision when defense counsel [has] 'not' fulfill[ed] their obligation to conduct a thorough investigation of the defendant's background.'" *Rivera v. State*, 123 S.W.3d 21, 31 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd) (quoting *Wiggins*, 539 U.S. at 520).

8

C. *Analysis*

Here, the quantum of evidence already known to trial counsel at the second revocation hearing was that appellant was "a little bit slow in getting concepts across" and that he had "been with MHMR for a couple of years." Accordingly, the known evidence would lead a reasonable attorney to investigate further because even though trial counsel believed that appellant was competent, information that an accused is "suffering from mental and emotional injury" "[w]hile not presenting a potential bar to prosecution" is "significant in that it constitute[s] a basis for minimizing [the accused's] culpability." *Miller v. Dretke,* 420 F.3d 356, 364 (5th Cir. 2005).

At the new trial hearing, trial counsel testified that he neither contacted MHMR nor requested appellant's medical records from MHMR. According to Morris, the MHMR records that she had showed appellant had bipolar disorder and that he had been prescribed three medications to treat this illness. In preparation for sentencing, trial counsel failed to call Morris as a witness, did not hire a medical expert or have one appointed, did not have any new evaluation of appellant conducted by a medical expert, failed to explore further appellant's educational deficiencies, and failed to even subpoena the MHMR treating psychologist, even though expert testimony is vital to explaining the links between a criminal act and the mental and emotional illnesses of the accused. *See Miller*, 420 F.3d at 363 (noting that the expert testimony might have explained the offense and give the jury such information as would have, possibly, inclined them to offer probation). There is no evidence that these decisions were made for strategic reasons, as trial counsel admitted conducting virtually no independent investigation of appellant's MHMR background. *See Ex parte Briggs*, 187 S.W.3d 458, 467-470 (Tex. Crim. App. App. 2005) (concluding that counsel's failure to subpoena treating doctors or apply for

9

appointment of a medical expert prevented him from providing effective assistance of counsel, and noting financial reasons do not constitute strategic reasoning); *see, e.g., Wright v. State*, 223 S.W.3d 36, 43-44 (Tex. App.–Houston [1st Dist.] 2006, pet ref'd) (finding failure to hire expert fell below reasonable assistance of counsel); *see also Miller*, 420 F.3d at 364 (noting that expert testimony, though redundant, might help to show the defendant less culpable). In the absence of a full investigation and full development of the mitigating evidence developed at the new trial hearing, we cannot say that a reasoned trial strategy controlled trial counsel's decision not to investigate appellant's mental-health problems. *See Wiggins*, 539 U.S. 523-28. Because trial counsel offered no strategy for failing to offer evidence of appellant's mental-health problems in mitigation,[5] we hold that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Appellant therefore satisfied the first prong of *Strickland*.

D. *Prejudice*

To determine whether an accused was prejudiced by trial counsel's deficient performance at sentencing, "'we reweigh the evidence in aggravation against the totality of available mitigating evidence.'" *See Ex parte Martinez*, 195 S.W.3d at 730 (quoting *Wiggins,* 539 U.S. at 534). "We must decide whether the undiscovered and unoffered evidence would have created a reasonable probability that, had the [trial court] heard it, the verdict would have been different". *Id.* at 731.

Aggravated sexual assault of a child is a first-degree felony. TEX. PENAL CODE ANN. § 22.021(e) (Vernon Supp. 2008). Thus, appellant was facing five to 99 years or life imprisonment, and a fine of up to $10,000 for each count. *Id*. at 12.32(a), (b) (Vernon

---

[5]*See also Raines v. State*, No. 02-04-500-CR, 2005 WL 1654880, at *2-3 (Tex. App.–Fort Worth, July 14, 2005, no pet.) (not designated for publication) (finding no ineffective assistance when plausible strategy explained why attorney did not put on mitigating evidence of mental illness).

10

2003). Indecency with a child by contact is a second-degree felony. *Id.* § 21.11(e). Thus, he was facing two to twenty years' imprisonment and a fine of up to $10,000 for each count. *Id*. 12.33(a), (b). Appellant received the maximum prison sentence for the second-degree felonies, but his sentences for the two first-degree felonies fell within the lower end of the punishment range. The four sentences are to run concurrently.

The trial court assessed punishment after: (1) having previously sanctioned appellant and modifying the conditions of his community supervision; (2) hearing evidence at the second revocation hearing; and (3) hearing evidence offered in mitigation, which was that appellant was "a little bit slow in getting concepts across" and that he had "been with MHMR for a couple of years." Appellant failed to carry his burden to come forward with mitigation evidence that demonstrated there is a reasonable probability the trial court would have handed down either a reduced sentence or an alternative sentence had it been admitted in mitigation at the second revocation hearing. *See Rivera*, 123 S.W.3d at 32 (noting that the result of the proceeding would have been different had information been available to counsel which would have led to mitigating evidence sufficient to reduce accused's sentence had counsel fulfilled duty to investigate). At the new trial hearing, there was some evidence of what was not offered at the second revocation hearing, including (1) appellant's testimony of his limited educational aptitude, (2) appellant's history of being on social security disability, and (3) Morris's testimony that appellant had bipolar disorder. Even though trial counsel failed to fully conduct an investigation and failed to develop appellant's mental-illness history and educational deficiency, appellant has failed to provide any explanation of how this might have changed the result of the sentencing, especially as the trial court was aware that appellant had some history of mental illness already. We note that at the end of the new trial hearing, the trial court stated, "[A]s you

11

know, the focus of the first [revocation] hearing that we had dealt with the M.H.M.R. problem. . . ."

We therefore conclude that appellant did not satisfy the second Strickland prong. *See Strickland*. 466 U.S. at 694.

### III. Conclusion

We overrule the issue and affirm the trial court's judgment.


ROSE VELA
Justice


Do not publish.
Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and
filed this 5th day of March, 2009.