Myer Ray McALLISTER, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–94–00873–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 31, 1996.

Discretionary Review Refused
Feb. 5, 1997.

Alex Azzo, Houston, for appellant.

Ernest Davila, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

AMIDEI, Justice.

Myer Ray McAllister appeals his conviction by a jury for murder. The jury assessed his punishment at fifty-five years imprisonment. In four points of error, he contends the evidence is insufficient to support his conviction and he received ineffective assistance of counsel. We affirm.

On June 19, 1993, at about 1:00 a.m., appellant and the victim, Chriss Ann Washington (Chriss), went into a transportable toilet (Port–A–Can) on Capital Street in Houston to have sex. Chriss and appellant started fighting in the toilet. Appellant stated in an oral confession that Chriss was drunk and pulled a knife and "grazed" him with it. Appellant stated he took the knife from her and "bam bam." Appellant then said, "I really didn't think I hurt her, well, well, I shouldn't have done it anyway." Sgt Belk, Houston police department, recorded appellant's statement and started the statement procedure by explaining to appellant the reason he was in custody. Sgt Belk told appellant he was in custody because a witness saw a man matching his description running from the scene, that appellant told John McGahey he had stabbed Chriss, and Chriss was dead. Sgt Belk then asked appellant to tell him what happened. Appellant replied, "I told you yesterday, I got tired of her cuttin' me and hittin' me and stuff."

Witness Richard Zuniga testified he saw a man matching appellant's description running from a woman lying in the street about twenty yards from the Port–A–Can. He heard someone say "Help me," then looked and saw a man running away from the wom-

an. He asked the man what was wrong but the man didn't respond. He could not positively identify appellant in court as the man he saw running away but testified, "It looked like him," indicating the appellant.

John McGahey was a member of Alcoholics Anonymous (AA) and testified he met appellant at an AA meeting two or three weeks prior to the killing and agreed to sponsor appellant and help him with the AA 12–step program. McGahey had also met Chriss about two times. McGahey talked to appellant almost every day before the killing and testified that appellant talked about killing Chriss. On the day of the murder, appellant called McGahey and told him he fought with Chriss, that she pulled a knife, cut him, and that he pulled a knife and hurt her and said "either she's in Ben Taub or she is dead." McGahey called the police and reported the conversation to Sgt Belk. McGahey led police officers to appellant who was found and arrested walking on the street.

Bryan Allen Wood testified he saw appellant and Chriss the day before Chriss was murdered and appellant accused Mr. Wood of sleeping with Chriss.

Dr. Parungao, Harris County medical examiner's office, testified he examined Chriss' body and found seventeen stab and cutting wounds, one of which was fatal (a wound through the lung). Dr. Parungao testified that Chriss' blood alcohol reading was .370, almost four times the "legal level" for intoxication of .10. He also testified that she had some cocaine in her blood. He testified, generally, that cocaine is a stimulant and alcohol is a depressant, and that by taking cocaine, a person can sometimes overcome the effects of alcohol to some extent.

In point of error one, appellant claims the evidence is legally insufficient to show that appellant caused the death of the victim named in the indictment, Chriss Ann Washington. Specifically, he argues the state did not link the woman found lying in the street with the victim the medical examiner performed the autopsy upon. We disagree.

■ The crime scene was investigated by Officers Beverly Trumble, R.H. Hernandez, and Sgt Belk within an hour of the stabbing.

Photographs were taken of the Port–A–Can showing blood on the toilet seat and blood in front of the toilet seat. Sgt Belk testified that Houston Fire Department paramedics took Chriss to Ben Taub Hospital. Sgt Belk interviewed witness Zuniga who saw the body of a woman on the ground about twenty yards from the Port–A–Can bleeding badly. Sgt Belk went to Ben Taub Hospital to check on Chriss' condition, but she died before he arrived. While Sgt Belk was at the hospital, he obtained Chriss' driver's license from her personal possessions. The driver's license identified her as Chriss Ann Washington and the name and address on the driver's license were identical to the name and address of the victim in the autopsy report. The medical examiner testified that Chriss' body had seventeen stab and cutting wounds, one of which was fatal. Appellant admitted stabbing Chriss inside the Port–A–Can. Chriss' sister, Betty Henderson, identified a photograph of Chriss made by the medical examiner at the morgue. We find the chain of evidence was sufficient to prove that the woman found at the scene was the same person identified as Chriss Ann Washington in the autopsy report of the medical examiner. *See Rains v. State,* 604 S.W.2d 118, 120 (Tex.Crim.App.1980). Point of error number one is overruled.

In point of error two, appellant contends the state failed to rebut appellant's self-defense claim by sufficient evidence.

When reviewing the sufficiency of the evidence the appellate court will look at all the evidence in the light most favorable to the verdict or judgment. *Garrett v. State,* 851 S.W.2d 853, 857 (Tex.Crim.App.1993); *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim. App.1984). In so doing, the appellate court is to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Ransom v. State,* 789 S.W.2d 572, 577 (Tex. Crim.App.1989), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). This standard is applied to both direct and circumstantial evidence cases. *Chambers v. State,* 711 S.W.2d 240, 245 (Tex.Crim.App.

1986).. In conducting this review, the appellate court is not to re-evaluate the weight and credibility of the evidence, but act only to ensure the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.1993); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

The state is not required to affirmatively produce evidence to refute a self-defense claim, but must prove its case beyond a reasonable doubt. *Saxton v. State,* 804 S.W.2d 910, 912 (Tex.Crim.App.1991). The issue of self-defense is an issue of fact to be determined by the jury and the jury is free to accept or reject the defensive evidence. *Id.* at 913–14. A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory. *Id.* at 914.

The evidence of self-defense by appellant consists of his statement to Sgt Belk that Chriss pulled a knife on him in the Port–A–Can and "grazed" him with the knife. Sgt Belk took photographs of appellant's torso and arms showing no cuts or marks whatsoever. The trial court submitted a self-defense instruction in the jury charge. The jury could have found that appellant acted in self-defense or rejected his theory by finding him guilty. The jury also had a choice to find the appellant not guilty, guilty of murder, or guilty of voluntary manslaughter. The jury rejected appellant's claim of self-defense by finding him guilty of murder. We find the evidence is sufficient to sustain the jury's finding. We overrule point of error two.

In points of error three and four, appellant contends he received ineffective assistance of counsel under the federal and state constitutions. Appellant specifically claims his trial counsel should have challenged the warrantless arrest and communications made to John McGahey.

Witness John McGahey received a call from appellant at about 8:00 a.m., June 19, 1993, approximately seven hours after Chriss was stabbed and left in front of the Port–A–Can. McGahey testified that appellant told him he had a fight with Chriss, that he cut her, and he thought she was badly hurt or dead. McGahey testified that appellant sounded like a "scared rabbit." Thereafter, McGahey called Sgt Belk who came over to McGahey's house and hooked up a telephone recorder, anticipating another call by appellant. Sgt Belk obtained the consent of McGahey to record any calls that might come in from appellant to McGahey. At about 10:00 a.m., June 19,1993, appellant called McGahey and Sgt Belk listened in on the conversation and recorded it. Appellant again reported the incident. After the conversation was over, McGahey went with Sgt Belk and guided him to where he thought appellant was hiding. Appellant told McGahey he was staying under a bridge at Loop 610 and Broadway street. Sgt Belk and McGahey went to the area where the bridge was located and spotted appellant walking down Broadway. Sgt Belk arrested appellant and took him to the police station where he read appellant his rights warning and secured his oral confession on a tape recorder. Appellant's trial counsel asked Sgt Belk on cross-examination, "What was your probable cause for arresting him?" Sgt Belk responded that John McGahey knew appellant and told Sgt Belk that appellant had called McGahey and advised him he had a fight with Chriss and stabbed her or killed her. Sgt Belk testified that McGahey was with him and guided him to the location where he pointed out appellant for Sgt Belk. McGahey also advised Sgt Belk that appellant used an alias, "Ray Lewis." Sgt Belk was one of the officers that investigated the homicide at the scene at about 2:00 a.m., June 19, 1993. Zuniga, the only eye witness, gave Sgt Belk appellant's description and reported the fact that appellant ran away from the scene without saying anything.

A defendant in a criminal case is entitled to reasonably effective assistance of counsel. *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex. Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Ex Parte Duffy,* 607 S.W.2d 507, 513 (Tex.Crim. App.1980). Texas follows the federal standard enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under that standard, a defendant must show: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Essentially,

appellant must show that: (1) counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is defined as probability sufficient to undermine confidence in the outcome. *Miniel v. State,* 831 S.W.2d 310, 323 (Tex.Crim.App.1992), *cert. denied,* 506 U.S. 885, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992).

Judicial scrutiny of counsel's performance must be highly deferential. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable profession assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. An ineffectiveness claim cannot be demonstrated by isolating one portion of counsel's representation. *McFarland v. State,* 845 S.W.2d 824, 843 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). Therefore, in determining whether the *Strickland* test has been met, counsel's performance must be judged on the totality of the representation. *Strickland,* 466 U.S. at 670, 104 S.Ct. at 2056. The defendant must prove ineffective assistance of counsel by a preponderance of the evidence. *Cannon v. State,* 668 S.W.2d 401, 403 (Tex.Crim. App.1984).

Appellant argues that his warrantless arrest was unlawful and produced two pieces of evidence that were harmful: (1) the lack of fresh cut marks bruises on his body photographed by the police officers which served to rebut his claim of self-defense and, (2) an oral confession taken by Sgt Belk. Appellant claims his trial counsel should have objected to the introduction of this evidence on the grounds that his arrest was unlawful and therefore the evidence would not be admissible.

Sgt Belk was aware that a man meeting appellant's description was involved in the stabbing of Chriss after he investigated the incident at the scene and talked to witness Zuniga. McGahey received a call from appellant in the morning approximately seven hours after appellant had stabbed Chriss

and ran away. Appellant seemed nervous and scared to McGahey; he acted like a "scared rabbit." McGahey called Sgt Belk who came over to McGahey's house and recorded the second conversation between McGahey and appellant where appellant again admitted he stabbed Chriss. McGahey thought appellant was living under a bridge and took Sgt Belk to the scene. Upon spotting appellant walking down the street near the bridge, Sgt Belk arrested him. Sgt Belk had probable cause to arrest appellant under article 14.04, Texas Code of Criminal Procedure, which provides:

Where it is shown by a satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

Sgt Belk knew a murder had been committed and a man meeting appellant's description had run from the scene. McGahey reported to Belk that appellant confessed to the murder over the telephone to McGahey and was scared of being arrested and sent to prison. McGahey told Sgt Belk appellant advised he was living under a bridge. Sgt Belk confirmed McGahey's report of appellant's confession and heard it himself from appellant on McGahey's telephone. Appellant was arrested while on foot on a public street. Sgt Belk had probable cause to arrest appellant and would be justified under article 14.04 because he had proof that appellant killed Chriss and appellant had (1) run away from the scene, (2) was nervous and afraid, (3) was using an alias, "Ray Lewis" and, (4) was transient with no permanent residence. Appellant was an imminent risk for escape and the warrantless arrest was justified.

In *Allridge v. State,* 850 S.W.2d 471, 491 (Tex.Crim.App.1991), *cert. denied,* 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993), the court of criminal appeals stated:

In the process of analyzing a warrantless arrest, it is the combination of factors that constitute a reasonable conclusion that

there is probable cause to arrest without a warrant: the information that a crime has been committed, the knowledge by the arresting officers of the facts of the crime, the observations of the arresting officers, and the arresting officers' basis for believing that a suspect would take flight if not placed in custody.

*Id.* at 491.

 In *Allridge,* the officer had proof of a robbery-murder by three men and proof that appellant had been identified as the shooter. The officers found appellant hiding in one of the bathrooms of his brother's apartment. The arrest was made within hours of the robbery-murder. The court of criminal appeals found that the close proximity of time of the apprehension to the crime, in addition to appellant's attempt to hide from the police in the bathroom, were sufficient facts for the officers to conclude appellant would take flight and that procuring a warrant was impractical. The arrest in this case was made ten hours after Chriss was killed and the officers had proof that appellant was the killer. The officers were advised that appellant was transient, living under a bridge, nervous and afraid, using an alias and, an alcoholic who had run away after committing the crime. We find that these facts are sufficient for the officers to have concluded that appellant would take flight and that procuring a warrant was impractical under article 14.04, Texas Code of Criminal Procedure. *Id.* Since a warrantless arrest was justified, an objection by appellant's counsel to the admission of evidence on the grounds that the arrest was not valid would have been useless. Trial counsel's decision not to object on this ground could have been trial strategy. An appellate court will not use hindsight to second guess a tactical decision made by trial counsel, which does not fall below the objective standard of reasonableness. *Solis v. State,* 792 S.W.2d 95, 100 (Tex.Crim.App.1990). We find that appellant's trial counsel was not ineffective for failure to object to the admission of evidence on the grounds that his warrantless arrest was invalid.

Appellant further argues that his trial counsel was ineffective for failure to object to any and all communications made by the appellant to John J. McGahey because the communications were privileged under rule 510, Texas Rules of Criminal Evidence, which states:

A communication to any person involved in the treatment or examination of alcohol or drug abuse by a person being treated voluntarily or being examined for admission to treatment for alcohol or drug abuse is not admissible.

Chapter 464, Health and Safety Code, which applies to facilities treating alcoholics and drug-dependent persons, specifically exempts organizations such as Alcoholics Anonymous from its provisions, in section 464.003, Exemptions, as follows:

This subchapter does not apply to: ... (7) a 12–step or similar self-help chemical dependency recovery program: (A) that does not offer or purport to offer a chemical dependency treatment program; (B) that does not charge program participants; and (C) in which program participants may maintain anonymity.

With the exception of those facilities and organizations that are specifically exempted under section 464.003, Health and Safety Code, all others must be licensed under section 464.002. "Treatment" means a planned, structured, and organized program designed to initiate and promote a person's chemical-free status or maintain the person free of illegal drugs. TEX.HEALTH & SAFETY CODE ANN. § 464.001(4) (Vernon 1992 & Supp. 1995).

 John McGahey was a "sponsor" offering to help appellant with the 12–step program of Alcoholics Anonymous and was not "a person involved in the *treatment* or examination of alcohol or drug abuse by a person being *treated* voluntarily or being examined for admission to treatment for alcohol or drug abuse" under Rule 510, Texas Rules of Criminal Evidence (emphasis added).

Furthermore, the communications admitted in evidence had nothing to do with the AA 12–step program because it did not involve appellant's alcohol abuse. We find that appellant's communications to John McGahey

were not privileged under rule 510, Texas Rules of Criminal Evidence.

██ We hold that appellant's trial counsel was not ineffective for failing to invoke a privilege that was inapplicable. *See Tatum v. State*, 919 S.W.2d 910, 913 (Tex.App.— Fort Worth 1996, no writ).

We overrule appellant's points of error three and four.

The judgment of the trial court is affirmed.