# NOS. 12-12-00170-CR
# 12-12-00171-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ROGER DANIEL BECK,* *APPELLANT* | § | *APPEALS FROM THE 294TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *VAN ZANDT COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Roger Daniel Beck appeals his conviction for aggravated assault and aggravated sexual assault. In three issues, he argues that the evidence is insufficient to support the verdict and that the trial court erred by allowing hearsay evidence and by denying a requested jury instruction. We affirm.

### BACKGROUND

On December 29, 2009, Sheila Beck called the police to the home she shared with Appellant. When the police arrived, Appellant came to the front door and told the officers to "get the f\*ck off his property." Sheila was able to leave from the back of the home and make it to the officers. She was naked and appeared to have blood on her back. She had cuts to her body in several places. Appellant refused to leave the house. He asked the officers if Sheila had called 911, and he stated that he "cut her the f\*ck up" and that he would "kill her." After a several hour standoff, the police forcibly took Appellant into custody.

It was later determined that the substance on Sheila's back was chocolate syrup, but she had injuries both substantial and superficial. She told a nurse that Appellant had held her captive

1

for hours, assaulted and choked her, cut her hair, cut her body in a number of places, and sexually assaulted her. The nurse documented more than forty injuries to Sheila. Some were areas of her body that were tender; others were bruises and cuts, including a bruise under one of her eyes and bruises in her genital region. The nurse also documented puncture wounds to Sheila's feet and face. Inside the home, the police found implements that Sheila told the police she had been assaulted with as well as blood on the bed and in the bathroom.

A Van Zandt County grand jury indicted Appellant for the felony offenses of aggravated sexual assault and aggravated assault. The district attorney also alleged that Appellant had a prior felony conviction. Appellant pleaded not guilty, and a trial was held. The jury found him guilty as charged. The jury found the allegation that he had a prior felony conviction to be true and assessed a sentence of imprisonment for life on the aggravated sexual assault charge and for twenty years on the aggravated assault charge. This appeal followed.

### SUFFICIENCY OF THE EVIDENCE

In his third issue, Appellant argues that the evidence is insufficient to support the verdict. Specifically, he asserts that the "evidence is insufficient for the jury to find the element of the crime of lack of consent beyond a reasonable doubt."

### Standard of Review and Applicable Law

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (plurality opinion). Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007). Under this standard, a reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *See Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, a reviewing court defers to the fact finder's resolution of conflicting evidence unless that resolution is not rational in light of the burden of proof. *See Brooks*, 323 S.W.3d at 899–900. The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the

2

defendant committed the crime.  *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge.  *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried."  *Id.*

As alleged in the indictments, the State's evidence had to show that Appellant knowingly or intentionally caused the penetration of the anus or female sexual organ of the complaining witness with his hand, the butt of a knife, a cell phone, his finger, or a beer can, without her consent and used or exhibited a deadly weapon during the course of the criminal episode.  TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i) (West Supp. 2012).

## Analysis

Appellant argues that the State did not prove that Sheila Beck did not consent to the sexual acts described at her trial.  Appellant does not challenge any of the other elements of the offense. His description of the evidence at trial reduces it to a dichotomy between her testimony and the report given to the sexual assault nurse examiner.  Appellant characterizes Beck's testimony as being consistent with the acts being consensual and asserts that the statements made to the nurse are inadmissible and, therefore, should not be considered.  There are several problems with this analysis.

First, we consider all of the evidence when conducting a legal sufficiency review, even if that evidence is inadmissible.  *See Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013) ("[W]hen conducting a legal sufficiency review, this Court considers all evidence in the record of the trial, whether it was admissible or inadmissible.") (quoting *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)).  The second problem with Appellant's proposed analysis is that Beck's testimony contained statements that would have allowed a rational jury to conclude that she did not consent to Appellant's acts.

Beck's testimony was sympathetic generally to Appellant.  She had signed an affidavit of nonprosecution and had asked the district attorney not to prosecute Appellant.  She testified that Appellant was quite intoxicated and that she did not "know who he was."  She testified that the

3

acts were "just between a husband and a wife" and that she consented to them. But while Beck said she consented to the sexual acts, the jury may not have taken her statement at face value. When asked if Appellant sexually assaulted her, Beck said, "[W]e did go through some of that, yes." And while she said that she did "willingly do it," immediately after that she said that she did it because she "didn't want him to hit [her] again," that she did it under "duress," and that if she had had her choice, she would have left the house and not done those acts.

In sum, we consider all of the evidence when reviewing the sufficiency of the evidence. Beck told the nurse that she did not consent to the sexual assault, and the jury could have understood her testimony to be that she did not consent to the sexual assault. The jury's conclusion that Beck did not consent is rational and reasonable. We hold that the evidence is sufficient to show that Appellant committed the offense of aggravated sexual assault. We overrule Appellant's third issue.

**ADMISSION OF EVIDENCE**

In his first issue, Appellant argues that Beck's statement to the nurse was inadmissible hearsay and that the trial court erred in admitting it over his objection.

**Applicable Law and Standard of Review**

Hearsay is an out of court statement offered in evidence for the truth of the matter asserted. *See* TEX. R. EVID. 801(d). Hearsay is inadmissible unless there is an exception allowing for its admission. *See* TEX. R. EVID. 802. One exception to the hearsay rule allows statements for purposes of medical diagnosis or treatment to be admitted. *See* TEX. R. EVID. 803(4). To be admissible under this exception to the hearsay rule, the state, as the proponent of the evidence, must show that the complainant was aware that the statements were being made for purposes of medical diagnosis or treatment and the proffered statement was pertinent to diagnosis or treatment. *See* ***Taylor v. State***, 268 S.W.3d 571, 589–91 (Tex. Crim. App. 2008). The state must also establish that the complainant was aware that her proper diagnosis or treatment was dependent on the veracity of her statements. ***Id***. at 589.

A court reviews a trial court's ruling on the medical diagnosis exception to the hearsay rule in terms of whether the trial court's ruling is so clearly wrong as to lie outside the zone within which reasonable people might disagree. *See* ***id***. at 579.

**Analysis**

4

Appellant asserts that the statements made to the nurse in this case were not made for purposes of medical diagnosis or treatment. Specifically, Appellant argues that the statement could not have been made for medical diagnosis because the trial court did not permit the nurse to testify as an expert and because the statement was not obtained to further a diagnosis but to gather evidence in a criminal investigation.

Neither of these arguments suggests that the trial court erred. The trial court did not permit the nurse to testify as an expert witness because the State had not designated her as an expert prior to trial. This is irrelevant to a Rule 803(4) analysis. The court of criminal appeals specifically "reject[ed] the notion" that a witness to an out of court statement admitted pursuant to Rule 803(4) must have medical qualifications. *Taylor*, 268 S.W.3d at 587. In fact, the court noted that statements to hospital attendants, ambulance drivers, or members of the family can be admissible. *Id*.

The qualifications of the person hearing the out of court statements are not the important consideration because the rationale for admitting such statements is the declarant's "selfish motive for truthfulness" in giving such a statement. *Id*. For that reason, the fact that the nurse may have been gathering information for a criminal prosecution does not lead to the conclusion that the statements were inadmissible. The core question in this kind of an analysis is the motivation of the declarant, not the receiver of the information. *See*, *e.g.*, *Green v. State*, 191 S.W.3d 888, 896 (Tex. App.–Houston [14th Dist.] 2006, pet. ref'd) ("[A]wareness of the purpose of the statement creates an inherent reliability in what is said.") Appellant has not shown that the trial court erred in admitting the statements made to the nurse, and we overrule his first issue.

## TEMPORARY INSANITY

In his second issue, Appellant argues that trial court erred in not giving an instruction on the issue of temporary insanity caused by intoxication in the penalty phase of the trial.

### Applicable Law and Standard of Review

Voluntary intoxication is not a defense to the commission of a crime. TEX. PENAL CODE ANN. § 8.04(a) (West 2011). However, evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried. *Id*. § 8.04(b). The trial court is obligated to charge the jury in accordance with

5

Section 8.04 when the defense is relied upon as a defense. *Id.* § 8.04(c). To be entitled to a jury instruction on temporary insanity caused by voluntary intoxication for the purpose of mitigation, however, a defendant must first establish that, as a result of his voluntary intoxication, he did not know that his conduct was wrong. *See Cordova v. State*, 733 S.W.2d 175, 190 (Tex. Crim. App. 1987).[1]

**Analysis**

As Appellant points out, his blood alcohol level was tested after he was arrested and it was very high. His blood alcohol content was .341 grams of alcohol per 100 mL of blood, or more than four times the legal limit for driving. Additionally, Appellant directs us to Sheila Beck's testimony that he was not himself during the hours-long assault.

We have reviewed the record and discovered additional comments by Beck about Appellant's mental state. Specifically, she stated that the "man that did that was not my husband," that "he just lost it," he was "bizarre," and that she "just thought he was going crazy." Additionally, Beck testified that Appellant self–reported having taken rat poison.

Beck's testimony, and the consistent testimony from the arresting officers, establishes that Appellant was intoxicated. But the legislature only allowed mitigation in instances where a person became insane, temporarily, from voluntary intoxication. Beck's testimony does not establish that Appellant did not know his conduct was wrong. *See Cordova*, 733 S.W.2d at 190. In *Cordova*, the court held that testimony that the defendant was "crazy drunk" was not evidence that "might be interpreted to mean that [the defendant] was temporarily insane" when he committed the offense. *Id.* at 190–91. Indeed, courts have consistently held that the fact that or evidence that the defendant may have been intoxicated at the time of the offense does not entitle him to a mitigation instruction. *See Miniel v. State*, 831 S.W.2d 310, 320 (Tex. Crim. App. 1992); *Shelton v. State*, 41 S.W.3d 208, 213 (Tex. App.–Austin 2001, pet. ref'd).

Appellant established that he was intoxicated, but he did no more than the defendant in *Cordova* who presented evidence that he was "crazy drunk." There was no evidence that Appellant failed to appreciate the wrongfulness of his actions. Accordingly, we hold that the trial

---

[1] In *Cordova*, the court included in its definition of insanity a person who was "incapable of conforming his conduct to the requirements of the law." *Cordova*, 733 S.W.2d at 190. That definition came from the court's own decision in *Sawyers v. State*, 724 S.W.2d 24, 33 (Tex. Crim. App. 1986), where the court relied on the statutory definition of insanity, which included both a right/wrong and a capability definition. The current definition of insanity recognizes only situations where a person who, as a result of a severe mental disease or defect, did not know that his conduct was wrong. TEX. PENAL CODE ANN. § 8.01(a) (West 2011).

court did not err in refusing to give an instruction on temporary insanity. We overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's three issues, we *affirm* the judgment of the trial court.

**SAM GRIFFITH**
Justice

Opinion delivered July 31, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NO PUBLISH)



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 31, 2013**

**NOS. 12-12-00170-CR**

**12-12-00171-CR**

**ROGER DANIEL BECK,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeals from the 294th Judicial District Court

of Van Zandt County, Texas. (Tr.Ct.Nos.CR10-00101; CR10-00102)

---

THESE CAUSES came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there were no errors in the judgments.

It is therefore ORDERED, ADJUDGED and DECREED that the judgments of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

8