ORIGINAL

**1041-15**

August 20, 2015

Jerryl Darwin Robinson

petitioner

v

CASE No. 03-14-00407-CR

The State of Texas

## Petition for Discretionary Review

Now comes the petitioner in the above numbered cause and files his petition for Discretionary Review.

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 27 2015

Abel Acosta, Clerk

Respectfully Submitted

Jerryl Darwin Robinson
#1939741 Pack 1 Unit
2400 Wallace Pack Road
Navasota, Texas 77868

FILED IN
COURT OF CRIMINAL APPEALS

AUG 27 2015

Abel Acosta, Clerk

# Table of Contents

Judgement Rendered .......... p.1

Statement of Case History .......... p.1

Ground Error One .......... p.2

Reason for Review .......... p.3

Authorities .......... p.4-6

Ground Error Two .......... p.7

Reason for Review .......... p.7-8

Prayer .......... p.9

# Table of Authorities

Barker v. Wingo 407 US 514 530-33 92 S.Ct 2186 .......... p.4,7

Canto v. State 253 SW3d 273

Doggett v. US 505 US 647. 655-56 120 L.Ro.2d 520 S.Ct=112
S.Ct 2686 (1992 p.6

Ex Parte v. Skinner 2009 Tex App Lexis A*8-9 p.3

Ex Parte v. Turner 2014 Tex App ~~SW3d~~ Lexis 8706 p.3
Tex App - Austin 2014 pet. Ref'o

Moore v. Arazonia 414 US 25 26-27 38 L.Ed 2d 783
94 S.Ct 188 (1973)(per curiam) p.6

Phillips v. State 650 SW2d 395, 399 (Tex Crm. App 1983) p5

Robinson v. State 240 SW3d 919 922-26 p.4,5

State v. Rangel 980 SW2d 840, 843 (Tex App San Antonio
1998 no pet) .......... p.5

Six Amendment of the United States Constitution .. p.2

Strickland v. Washington 466 US 668, 687 104 S.Ct 2052, 80
L.Ed 2d 674 (1984) 30,31, 35, 37. p.7

Speedy Trial Act
Texas Constitution                                    p 2
Texas Code of Criminal Procedure  32.01, 28.061  p.4,5,8
Zamurano v. State  84 SW3d 643,648 (Tex App 2002)..p3
Washington v. State  326 SW3d 701,706  p 3
United States v. Macdonald 456 US 1,7, 102 S.Ct 1497, 71 L.Ed
2d 694 (1982
Texas Rules Appellate Rule 44.4                  p-5
United States v. Cronic  104 S.Ct 239  p 7,8
State v. Frank Pannamore  CR 2013-243  p.9

## Statement of Case

The following is a brief timeline to aid the Court in its understanding of the events:

(1) November 17, 2011, Mr. Robinson the petitioner was arrested via an arrest warrant and provided his warning by a Magistrate on November 18, 2011 [CR, pp. 7-9; Supp. CR pp 15].

(2) February 27, 2012 After having been incarcerated for over 90 days, petitioner filed a handwritten Motion to Release (hereafter known as petitioner's "90 day petition") [CR, pp] A hearing was never held.

(3) June 10, 2013, After having been on bail for more than 180 days, petitioner, by his own handwritten motion, properly filed a Petition for Writ of Habeas Corpus for Discharge for Delay (hereafter known as petitioners "180 day writ") as he was held on bail for his appearance to answer criminal accusations and no indictment had been presented after 180 days from his date of commitment [CR, pp]. Despite Petitioners request, no hearing was ever held on his writ.

(4) August 5, 2013 - With no action from the trial court on the Petitioner's 180 day writ, Petitioner filed a Petition for writ of Mandamus (hereafter known as "petitioners" petition for Mandamus relief") with the Third Court of Appeals requesting the trial court be ordered to hear Petitioners 180 day writ [Supp. CR pp. 31]

(i)

On June 11, 2014 the Jury the entered a verdict of Guilty as to count one of the indictment. [CR, pp. 74; Vol 3, pp 152] Count Two was never read to the jury due to it being struck during motions for directed verdict. [RR Vol. 3 pp. 125-127. Petitioner plead "true" to enhancement paragraph of the indictment and the jury sentences Mr. Robinson to 15 years in prison. [RR, Vol 4 pp. 19 CR, pp. 77-86, 101-102. Petitioner timely filed his Notice of Appeal on December 3, 2014 [CR, p. 217]. Appellant brief was filed on February 6, 2015. On July 22, 2015 a judgement was rendered "AFFIRMED". p. 15-16

Ground Error One

The trial court error lead to a substantial, presumptively pre-judicial and unnecessary delay which subjected the Petitioner, Mr Robinson to oppressive pretrial incarceration, high levels of anxiety and concern and impaired Mr Robinson's ability to prepare an adequate defense as nearly (21) twenty-one months had elapsed between arrest and the indictment.

(1) Mr. Robinson's constitutional right to a speedy trial was deprived by the trial court. Did the court abuse its discreation in appling the direct violation of the United States and Constitutions? The state was not ready for trial and after 180 days, Mr Robinson was not formally charged with a crime. Mr Robinson, justly exercises his right to be free from oppressive pre-trial incarceration by filing his 180 day writ with the court based on the Sixth Amendment of United States Constitution, Article 1 section 10 of the Texas Constitution and

(2)

the Texas Criminal Code of Procedure Article(s) 32.01 and 28.061. [P.16]

Did the court ERROR by failing to Act on the writ Request to adjudicate the injustices imposed upon Mr Robinson? Is this a clear abuse of discretion and reversable error by the courts inadequate Constitutional protection harmed Mr Robinson by depriving him of his pre-trial liberty and permitting undue Delay?

In Mr. Robinson's 180 Day writ which sought counsel, Michael Zamora to adopt his writ, he failed to investigate and file the writ on Mr Robinson behalf. Mr Zamora wholly failed to investigate or draft and file any Motions to aid Mr Robinson in his defence or dismissal. Rather Mr Robinson, in order to protect his Constitutional rights had to Research, draft file both the 90 Day and 180 Day Motions along with a Motion for Mandamus relief. Mr Zamora has been put on notice by the trial court and the Texas Bar to have dispute resolution still failing to assist Mr Robinson. (p. 16)

## Reason for Review

In Analysis the reviewing court is to utilize only the records as it existes before the trial court at the time of filing of the writ of habeas corpus. (Zamorano v. State 84 SW3d 643) 648 (Tex Crim App 2002) Ex parte Skinner, 2009 Tex App. Lexis 6340 *6 (Tex App - Corpus Christi 2009 mem. op) Ex parte Turner, 612 SW2d 611, 612 (Tex Crim. App 1981; Washington v. State 326 SW3d 701, 706 (Tex App - Houston [1st Dist 2010, no pet) Although a pre-trial writ of habeas corpus

(3)

is not ordinarily available to defendants for speedy trial claims in situations such as this, where the State has failed to bring formal charges in a timely fashion, No other Adequate Remedy Exists. p. 20.

The Appellate court is to apply A balancing test to four factors when pre-trial delay denies an accused of his right to a speedy trial. In Barker v. Wingo 407 US 514, 530-533 four factors also known as Barker factors. p. 20-p23

Authorities.

The fundamental Right to a speedy trial is guarantees under the Sixth Amendment of the United States Constitution as well as Article 1, section 10 of the Texas Constitution. US. Const. Amend. XIV; Tex Const art 1 § 10. This right is immediately triggered by the happening of either the arrest or indictment of an accused, whichever happens first. United States v. McDonald, 456 U.S. 1, 7, 102 St Ct. 1497, 71 L. Ed. 2d 696 (1982) Nelson, 989 F. 2d. 847 857 (5th Cir 1993; Ex parte Skinner, 2009 Tex. In the Petitioners 180 day Writ pursant to "32.01 is A triggering mechanism to 28.061" in the Texas Code of Criminal Pro Closure. The law seeks dismissal barring further prosecution. The court Never recieves from the State to show good cause for the delay. [P. 23]

Even though Mr Robinson had counsel on record Mr Zamora who had failed to file Any motions on his behalf. Mr Robinson on course was to file pro-se to protect his rights set out in the US and Tex Constitutions. This was not hybrid-representation in Robinson v. State 240 Sw3d

(4)

919 has held "An appeal may be taken from a ruling on a pro-se motion made by a defendant has counsel. Once a trial court actually rules on a pro-se (or any) motion we see no reason why the decision should be insulated from review on appeal." The record of the writ of Mandamus relief clearly states from the Memorandum Opinion from the Third Court of Appeals recieved by both the District Clerks office and Mr. Robinson, indicate that the trial court provided some sort of documention to lead the Third Court to believe action has been taken on the petition [Supp. CR pp 32] p. 25. In Robinson v State 240 Sw3d 923 "The appellate rules permit a remand to the trial court if the trial court committed an error that impedes the presentation of the cause to the court of appeals. (Tex RApp P. 44.4). In this case Article 32.01 pursant to 28.061 contains language requiring the court to dismiss any criminal accusation. p. 24 This case is the very type Article 32.01 triggering article 28.061 dismissing and barring any futher is designed to dismiss. The courts ruling is in conflict with the decisions rendered by triggering (8) eight months is presumptively prejudical in the Fourth Court of Appeals (State v. Rangel 980 Sw2d 840, 843 (Tex App - San Antonio 1998 no. pet). While the Texas Court of Criminal Appeals has found a delay of (17) seventeen months to be presumptively prejudical. Phillips v. State 650 Sw2d 396, 399 (Tex Crim App. 1983). Failure to demostrate prejudice, that is, impairment of Mr Robinson's "ability to present potenial defense - does not doom the claim" since

(5)

Excessive delay can compromise a trials reliability in unidentifiable ways. Moore v. Arizona 414 U.S. 25, 26, 27 38 L.Ed 2d 183, 94 S.Ct 188 (1973) (per curiam "Though time can tilt the case against either side ..., one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or for that matter identify, While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to other Barker criteria ... it is part of the mix of relevant facts and its importance increases with the length of delay." Doggett v. US, 505 U.S. 647, 655-656 120 L.Ed 2d 520, 112 S.Ct 2686 (1992).

Two of the years Mr. Robinson spent while in jail. The trial court and the state was never unaware where Mr. Robinson was, including time spent in another jail. There was still no formal indictment in which conditions on bail) each month Mr. Robinson asked the probation officer in charge of his file if he has been indicted. This caused his liberties to be restrained and subject to the very type of pretrial oppessive incarceration the speedy trial was designed to protect against. [P. 28] [Supp. CR pp 20 28, 33, 35-36, 40, 42, 46-48, 50, 51-52].

Did the court misinterpret the Barker v. Wingo by not weighing each factors 1-4? The United States Supreme Court has enumerated several factors as a balancing test by the trial court, and if required, by the reviewing court

(6)

When an issue involving one's fundamental right to a speedy trial arise Barker 407 US. a 514, Also the Barker factors have been adopted by the Texas Court of Criminal Appeals Hull v. State. [P. 25] 26-27.28. Petitioner, Mr Robinson suffered from great Amounts of Anxiety, suspicion and hostility as evidence from numerous letters to the District Clerk seeking to contact counsel Mr Zamora to adopt his motion as well as to the courts; including the trial court, Third Court of Appeals and even in the Texas Court of Criminal Appeals, no one seemed to know where certain ruling were or orders of judgement. Especially the missing order that was sent to the Third Court of Appeals that lead the Third Court of Appeals to deny Mr Robinsons Writ of Mandamus in a Memorandum Opinion which states the trial court had acted on the writ, known as the 180 day writ. [Supp CR, pp. 20, 28, 33, 35-36, 37, 40-42, 46-49, 50 51, 52].

GROUND ERROR TWO

Did the court Abuse, its descreation in Applying the Sixth Amendment of the United States Constitution guaranteeing his Right to Effective counsel?

In Applying Strickland v. Washington 466 US 668, 687 104 S.Ct 2052 the record clearly shows that along with factors set out in United States v. Cronic 104 S.Ct 239) "The time afforded for investigation and preparation (2) The experience of counsel (3) gravity of charge the complexity of possible offense (5) availability of

(7)

Accessibility of witnesses to counsel, p. 30, 31

First, Mr. Zamora failed to file a motion to release under a writ of habeas corpus nor adopt Mr. Robinson's 90 day or 180 day writs which was requesting dismissal due to delay under Article 32.01 and 28.061 while Mr. Robinson sat in jail. This is basic and common relief, dismissal was sought because it was stated in the law. These matters were brought to Mr. Zamora's attention. [CR] p. 32 [Supp. CR. 25] Why was Mr. Zamora appointed at all if even these basic principals were not recognized? pp 32-33

Mr. Robinson seconds attorney Parvis Collins in applying the factors in United States v. Cronic, Mr. Collins ① Mr. Collins failed to investigate the evidence that being the box of cigarettes stolen could hold 36 carton as stated in the indictment p. 34. Mr. Collins only strategy was that Mr. Robinson did not take the cigarettes. ② Mr. Collins was ineffective in that when the law of parties was being discussed he failed to change the strategy due to inexperience in such matters In the charge of court the count 2 was dropped in which the law states that Mr. Robinson had been convicted of prior thefts, but in the charge of court that clause was mentioned which prejudices the jury. p. 15 [RR vol. 3, pp 123-126] His counsel, Mr. Collins never objected [RR vol 3, 130, 131] ③ the gravity of the charge The courts have called these types of charges as run of the mill as stated in Mr. Robinson 180 day writ Mr. Collins was confused and let his inexperience be

(8)

influenced by the state and won the states case for them. P. 34-35. He, Mr. Collins made a simple process complicated covering the flaws in his Representation. (4) he ignores that value in a theft case is to important not to Explore. P.35 (5) When asked to why he didn't question the States only witness before trial, or why in cross-examination know the witness was being led, he never thought that he should have questioned her before trial. The analysis stated that defense counsel (1) hamstrung his client, (2) unnecessarily agreed not to argue (3) not request a lesser charge, (4) not make any arguments to the evidence; (5) even worse to be in complete agreement that the evidence is sufficient to support the greater, is not part of any sound trial strategy, stating he did not feel the evidence substantiated it. p.35. 36. Counsel cross examination completely lacked any investigation. p.39, Mr Robinsons co-defendant, Mr Frank Parramore was acquitted on both charges as the jury could not count 36 cartons in the box, but only between 28-33. State v. Frank Parramore CR 2013-245 P.40

## Prayer

WHEREFORE, premises considered, Petitioner, Jerryl Darwin Robinson Respectfully request that the judgment of conviction be reversed and remanded.

Respectfully submitted

Jerryl Darwin Robinson
#1939741

(9)

Certificate of Service

I hereby certify that on August 20, 2015, I Jerryl Darwin Robinson forwarded a true copy of the foregoing instrument to the Clerk of Court of the Texas Court of Criminal Appeals by placing the same in the United States Mail, postage prepaid Addressed to:

Texas Court of Criminal Appeals
201 W. 14th Street Rm 106 78701
P O Box 12308
Austin, Texas 78711-2308
C/o Clerk of Court

Humbly Submitted

Jerryl Darwin Robinson
#1939741

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00407-CR

Jerryl Robinson, Appellant

v.

The State of Texas, Appellee

FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
NO. CR2013-349, HONORABLE GARY L STEEL, JUDGE PRESIDING

## MEMORANDUM OPINION

Jerryl Robinson was convicted of theft. *See* Tex. Penal Code § 31.03(a)-(b) (setting out elements of offense). Specifically, Robinson was accused of being a party to stealing a box from a CVS Pharmacy that contained 36 cartons of cigarettes. The indictment alleged that the value of the stolen property was between $1,500 and $20,000, *see id.* § 31.03(e)(4)(A) (explaining that offense is state-jail felony if value of property is between $1,500 and $20,000), and contained six enhancement paragraphs alleging that Robinson had previously been convicted of six felonies. After the jury found him guilty, Robinson pleaded true to the enhancement allegations, *see id.* § 12.425(b) (elevating permissible punishment range for state-jail felony to that of second-degree felony if it is shown that defendant was previously convicted of two felonies and that second previous felony conviction occurred after first one became final), and the jury imposed a sentence of fifteen years'

1

imprisonment, *see id.* § 12.33 (setting out punishment ranges for second-degree felony). On appeal, Robinson contends that the evidence is legally insufficient to support his conviction, that the district court erred by denying his request for a speedy trial, and that he was denied effective assistance of counsel. We will address Robinson's sufficiency argument first and then address the remainder of his arguments in the order briefed. After overruling all of Robinson's issues on appeal, we will affirm the district court's judgment of conviction.

## DISCUSSION

### Legal Sufficiency

In his third issue on appeal, Robinson contends that the evidence is legally insufficient to support his conviction. In challenging the sufficiency of his conviction, Robinson contends that "no direct evidence was provided to substantiate the State's allegations as to the quantity of cartons within the stolen box or" to link the theft of the cartons to him. Regarding the contents of the box, Robinson contends that "none of the video or picture evidence submitted in trial indicated the number of cartons actually taken," that no testimony was elicited regarding the exact number of cartons in the box that was stolen, that the box was never recovered, and that the only evidence regarding the value of the property or the contents of the box was a ledger created by a CVS employee. Moreover, Robinson asserts that during the trial, testimony was introduced establishing that the box had been partially opened and placed behind the counter. Accordingly, Robinson insists that there was no way that the jury could have determined what was inside the box before it was taken.

Under the Penal Code, an individual commits the offense of theft if he "unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code § 31.03(a).

2

Moreover, the Code explains that appropriation is unlawful if "it is without the owner's effective consent." *Id.* § 31.03(b)(1). The indictment alleged that the property at issue was 36 cartons of cigarettes and that the value of the property was between $1,500 and $20,000. *Id.* § 31.03(e)(4)(A).

Furthermore, the jury charge contained an instruction regarding the law of parties. Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both," and "[e]ach party to an offense may be charged with the commission of the offense." *Id.* § 7.01(a), (b). "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). Intent to assist or promote may be inferred from the acts, words, and conduct of the defendant and from the circumstances in which the offense occurred. *Roberts v. State*, 319 S.W.3d 37, 49 (Tex. App.—San Antonio 2010, pet. ref'd).

Under the legal-sufficiency standard, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence

3

when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

To be deemed criminally responsible as a party, there must be evidence of "an understanding and common design to commit the offense." *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). When reviewing the sufficiency of that evidence, appellate courts may consider "'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction." *Id.* In addition, "[m]otive is a significant circumstance indicating guilt," and intent may "be inferred from circumstantial evidence such as acts, words, and the conduct of the" defendant. *Id.* at 50.

Evidence linking Robinson to the stolen property was presented through the testimony of Delores Rodriguez, who was working at the CVS on the night of the offense, through recordings from the surveillance cameras in the store, and through the statements that Robinson made during

4

his interview with the police. First, Rodriguez was called to the stand to testify regarding what she observed on the night in question. In her testimony, Rodriguez explained that a new shipment of inventory had been delivered and that the boxes containing cigarette cartons had been moved up behind the registers. Moreover, she explained that when she was going over the inventory and the invoices, Robinson and Frank Parramore entered the store together.[1] In addition, she agreed that photos from the store's security system showed Robinson and Parramore enter the store together. Those photos were admitted as exhibits and clearly show the faces of two men entering the store together.

When describing Robinson's interactions with Parramore, Rodriguez explained that when they walked in together, they were talking to one another. In her testimony, Rodriguez described how Robinson asked her to help him in the photolab of the store and that Parramore stayed at the front of the store. Next, Rodriguez testified that while she was helping Robinson, Parramore went behind the counter and grabbed a box of cigarettes. Later in her testimony, Rodriguez related that she believed that Robinson was working together with Parramore and that Robinson was attempting to distract her while Parramore stole the box. Rodriguez recalled that after she saw what happened, she chased after Parramore and caught up to him, that Parramore turned and acted like he wanted to fight, and that she returned to the store when she felt threatened. In addition, she explained that after Parramore grabbed the box, Robinson stated that he did not know that his friend was going to steal the box and that Robinson left after she said that she was going to call the police. During her testimony, Rodriguez stated that after she returned to the store, she called the police and noticed that

---

[1] The second individual was later identified as Parramore through the testimony of Detective Edward Wahrmund.

Robinson had left his phone and wallet at the photolab. The cellphone and wallet were admitted as exhibits, and the wallet contains Robinson's driver's license and other identifying information.

Second, during Rodriguez's testimony, surveillance footage from the night in question was played for the jury. The footage chronicles Robinson walking into the store with another man, shows Rodriguez leave the register area and head to another portion of the store, depicts the man that Robinson entered the store with go behind the registers and take a box after Rodriguez left, and shows the man leave the store with the box followed by Rodriguez and Robinson.

Finally, after Rodriguez finished her testimony, the State called Detective Edward Wahrmund to testify regarding his investigation of the crime and regarding an interview that he conducted of Robinson after Robinson turned himself in. A copy of that interview was played for the jury. In the interview, Robinson admits that he and Parramore intended to steal products from CVS on that night, but he insisted that he only planned on stealing razor blades.[2] During the interview, Robinson also admitted to having previously stolen razors from stores on multiple occasions and then resold them to other stores.

Given our standard of review and in light of the evidence summarized above, including Robinson's admission that he intended to steal property on the night in question and had stolen property from other stores in order to later sell it, as well as the reasonable inferences that the jury was free to make based on that evidence, we must conclude that the cumulative effect of the incriminating facts are sufficient to link Robinson to the stolen property and to support Robinson's

---

[2] While being questioned by Officer Wahrmund, Robinson stated that he got so "freaked out" after Parramore stole the box that he left his phone and wallet.

6

conviction for the theft of that property under the law of parties. *See Guevara*, 152 S.W.3d at 49; *see also Felters v. State*, 147 S.W.3d 488, 490-91 (Tex. App.—Fort Worth 2004, pet. ref'd) (concluding that evidence demonstrated more than "mere presence" and was sufficient to establish guilt as party to theft where evidence showed that defendant entered store with another person, that two individuals knew one another, and that they acted together).

As mentioned above, Robinson also contends that the evidence is insufficient to establish the contents of the stolen box or establish that the value of the property was more than $1,500 and less than $20,000 as alleged in the indictment. *See* Tex. Penal Code § 31.03(e)(4)(A). Evidence regarding the contents of the box as well as their value was presented through the testimony of Rodriguez as well as through the admission of an exhibit prepared by Rodriguez.

In her testimony, Rodriguez explained that when Robinson entered the store, she had not put any cigarettes on the store shelves and that she was just about to take the cigarettes out of the box and "ring them in and count them off." Next, Rodriguez explained that although the top of the box was open, she had not taken out any of its contents prior to the incident. In addition, she related that before inventory arrives at her store, the cartons are counted at the CVS warehouse and listed on an inventory sheet. Moreover, she stated that she had been doing this type of inventory for approximately a year and a half and that during that time, the inventory list from the warehouse had only been wrong "once or twice." Furthermore, she specifically testified that the box that Parramore took was full of cigarette cartons.

Moreover, when describing the contents of the box, Rodriguez explained that shortly after the offense, she checked the inventory to see what was missing and that 36 cartons of cigarettes

7

were missing and were never recovered. In addition, after performing this check, she made a ledger or receipt for the stolen items that showed that the value of the missing items was $1,913.44 before taxes. That ledger was admitted as an exhibit during the trial.[3]

Given the standard of review by which we review challenges to the sufficiency of the evidence and in light of the evidence presented as well as the reasonable inferences that the jury could make from that evidence, we must conclude that the evidence was legally sufficient to support the jury's determination that the stolen box contained 36 cartons of cigarettes and that the value of those cartons was more than $1,500 and less than $20,000 as alleged in the indictment.

For all of these reasons, we overrule Robinson's third issue on appeal.

## Right to a Speedy Trial

In his first issue on appeal, Robinson contends that the district court erred by failing to release him from confinement after he filed a pro se writ for a speedy trial. Moreover, he argues that the district court's failure to rule "led to a substantial, presumptively prejudicial and unnecessary delay, which subjected [him] to oppressive pretrial incarceration, high levels of anxiety and concern, and impaired [his] ability to adequately prepare his defense."

As an initial matter, we note that the facts of this case undermine somewhat Robinson's claim that he was subjected to "oppressive pretrial incarceration." The offense at issue occurred in November 2011, and Robinson was arrested a little over a week later. Approximately

---

[3] When initially talking with the police, Rodriguez stated that she thought that approximately 25 cartons had been stolen, but she explained in her testimony that she was just providing an estimate when she first talked to the police and that she did not learn the actual number until she finished performing her inventory of the items that had been delivered that night.

three months later, in early March 2012, Robinson was released on a personal bond on the condition that Robinson not commit additional offenses after being released. *See* Tex. Code Crim. Proc. art. 17.151, § 1. In December 2012, Robinson was arrested in Bexar County on a theft charge unrelated to the one at issue in this appeal. After learning of the additional offense, the district court in this case determined that Robinson had violated the terms of his bond and issued a capias for Robinson's arrest. In February 2013, Robinson sent a letter to the district court communicating that he had been convicted of an offense in Bexar County and was serving a six-month sentence. In May 2013, Robinson was taken into custody in Comal County after he finished his sentence in Bexar County. Approximately three months later, the State presented an indictment in the case. Accordingly, although many months passed between when Robinson was initially arrested and when an indictment was presented, during most of that time Robinson had either been released from confinement or had been incarcerated in another county for a separate offense. *See Brooks v. State*, Nos. 03-98-00295–00296-CR, 1999 Tex. App. LEXIS 1525, at *3-4 (Tex. App.—Austin Feb. 25, 1999, pet. ref'd) (not designated for publication) (noting when overruling issue related to pro se request for speedy trial that defendant was free on bond for much of that time).

Turning to his requests for a speedy trial, Robinson filed two documents seeking to invoke his right to a speedy trial. *See* U.S. Const. amend. VI (providing that accused shall enjoy right to speedy trial). First, Robinson filed a pro se motion for speedy trial right before he was released on bond in March 2012. Next, two months before the indictment was presented, Robinson filed a pro se application for writ of habeas corpus urging that his right to a speedy trial was being denied. Both filings relied on article 32.01 of the Code of Criminal Procedure, which provides that

9

if an indictment is "not presented against [the] defendant on or before the last day of the next term of the court . . . or on or before the 180th day after the date of commitment or admission to bail, whichever is later," "the prosecution . . . shall be dismissed." Tex. Code Crim. Proc. art. 32.01. In his writ application, Robinson urged that at the time that he filed his application 550 days had elapsed since he was initially arrested for the offense. Moreover, he requested that the charges be dismissed with prejudice. *See Cantu v. State*, 253 S.W.3d 273, 283 (Tex. Crim. App. 2008) (explaining that seeking dismissal rather than speedy trial "will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one").

On appeal, Robinson generally asserts that the district court's failure to grant his motion and his writ application was improper, "inevitably impaired" his defense because the memories of the witnesses had faded and because evidence became unavailable, and caused him anxiety; however, Robinson does not clearly set out how his ability to present a defense was impaired or specifically identify how or what relevant evidence became unavailable. *See Brooks*, 1999 Tex. App. LEXIS 1525, at *3-4 (overruling speedy trial issue and noting that there was no evidence that defendant's ability to present defense was impaired). As discussed previously, the surveillance footage chronicling the events as well as the recording of Robinson's interview with the police were available for examination and were presented during the trial. Moreover, although Robinson repeats some of his challenges to the ledger that were discussed in his sufficiency challenge, as summarized above, Rodriguez testified how she determined the value of the stolen property, and Robinson was able to cross-examine her regarding her recollections of the events in question. Finally, although Robinson contends on appeal that the stolen box was not adequately tested, he does not assert that the box somehow became unavailable due to the passage of time.

10

In any event, because Robinson was represented by counsel when he filed his motion for speedy trial and when he filed his writ application, the district court was not required to and did not rule on the motion or the application. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007); *see also Cavitt v. State*, No. 01-13-00900-CR, 2015 Tex. App. LEXIS 4137, at *14 n.2 (Tex. App.—Houston [1st Dist.] Apr. 23, 2015, pet. ref'd) (explaining that trial court was not obligated to rule on pro se writ of habeas corpus filed one and half years after defendant's arrest contending that right to speedy trial has been violated when defendant was represented by counsel); *cf. Stockton v. State*, No. 03-13-00505-CR, 2014 Tex. App. LEXIS 9627, at *2 (Tex. App.—Austin Aug. 28, 2014, no pet.) (mem. op., not designated for publication) (concluding that speedy-trial complaint was not preserved because trial court never ruled on his request and noting that trial court might not have ruled because defendant was represented by counsel when he filed his pro se motion for speedy trial). Defendants have no right to hybrid representation, and a "trial court is free to disregard any *pro se* motions presented by a defendant who is represented by counsel." *Robinson*, 240 S.W.3d at 922. Moreover, "a trial court's decision *not* to rule on a *pro se* motion" is not "subject to review" on appeal. *Id.*

For all of these reasons, we overrule Robinson's first issue on appeal.

**Effective Assistance of Counsel**

In his second issue on appeal, Robinson argues that he was denied effective assistance of counsel before the start of the trial and during the trial.

To succeed on an ineffectiveness claim, a defendant must overcome the strong presumption that his trial "counsel's conduct falls within the wide range of reasonable professional

11

assistance" and must show that the attorney's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 689, 694 (1984). Evaluations of effectiveness are based on the totality of the representation. *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013); *see also Davis v. State*, 413 S.W.3d 816, 837 (Tex. App.—Austin 2013, pet. ref'd) (providing that assessment should consider cumulative effect of counsel's deficiencies). Furthermore, even though a defendant is not entitled to representation that is error free, a single error can render the representation ineffective if it "was egregious and had a seriously deleterious impact on the balance of the representation." *Frangias*, 450 S.W.3d at 136.

In general, direct appeals do not provide a useful vehicle for presenting ineffectiveness claims because the record for that type of claim is usually undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). "This is true with regard to the question of deficient performance . . . where counsel's reasons for failing to do something do not appear in the record." *Id.* (stating that "counsel's conduct is reviewed with great deference, without the distorting effects of hindsight"). In addition, before their representation is deemed ineffective, trial attorneys should be afforded the opportunity to explain their actions. *Id.* If that opportunity has not been provided, as in this case, an appellate court should not determine that an attorney's performance was ineffective unless the conduct at issue "was so outrageous that no competent attorney would have engaged in it." *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

On appeal, Robinson contends that he was denied effective assistance of counsel by his pretrial counsel when his attorney failed to file a motion seeking his release after he had been

12

"sitting in jail for greater than the allotted 90 days, without prosecution." *See* Tex. Code Crim. Proc. art. 17.151, § 1 (providing that defendant who is accused of felony and "who is detained in jail pending trial . . . must be released on personal bond or by reducing the amount of bail required" if State is not ready for trial within "90 days from the commencement of his detention"). Moreover, Robinson asserts that he received ineffective assistance of counsel because his pretrial attorney failed to file a writ of habeas corpus seeking his release and seeking to have his charges dismissed after no indictment had been presented within 180 days of his arrest and his placement into custody. *See id.* art. 32.01. Robinson also asserts that this ineffective assistance was further compounded by the fact that he had to file his own pro se motions to the district court requesting release.

The ineffectiveness claims summarized above are based on his pretrial attorney's alleged failures to act, and the record before this Court is not sufficiently developed to evaluate those purported failures because neither his pretrial attorney "nor the State have been given an opportunity to respond to" the claims. *See Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Regarding the alleged failure to request Robinson's release on bond after 90 days, the record in this case does show that Robinson's pretrial attorney was appointed in December 2011 and that Robinson filed a pro se motion in February 2012 seeking his release because 90 days had passed since he was taken into custody. *See* Tex. Code Crim. Proc. art. 17.151. However, the record also reveals that Robinson's pretrial attorney filed a motion to reduce Robinson's bond in March 2012, that the district court granted the motion, and that Robinson was released on a personal bond subject to the condition that he not commit any offenses during his release.

Turning to Robinson's claim that his pretrial attorney was ineffective for failing to seek a dismissal of the charges after no indictment had been presented within 180 days, the

13

record does not establish why his pretrial counsel did not make the request urged by Robinson. Furthermore, Robinson has not demonstrated that if a dismissal had been granted under article 32.01, the dismissal would have resulted in all of the charges being dismissed with prejudice as he requested; on the contrary, generally speaking, the relief available under article 32.01 is temporary in nature because the defendant can be rearrested after an indictment is later presented. *See Ex parte Countryman*, 226 S.W.3d 435, 438-39 (Tex. Crim. App. 2007); *see also* Tex. Code Crim Proc. art. 12.01(4)(A) (providing that felony theft has five-year statute of limitations). Moreover, as summarized above, Robinson was released from the custody of Comal County a few months after his arrest, was later arrested and sentenced to six months' imprisonment in Bexar County, and was transferred to the custody of Comal County after finishing his sentence in Bexar County, and an indictment was presented approximately three months after he was returned to the custody of Comal County. *Cf. Ex parte Countryman*, 226 S.W.3d at 438-39 (upholding determination that claim under article 32.01 became moot after indictment was returned); *see also Griffis v. State*, 441 S.W.3d 599, 606 (Tex. App.—San Antonio 2014, pet. ref'd) (noting that if grand jury returns indictment by time complaint is brought to trial court, court is not required to release defendant from custody). Finally, we note that Robinson was given credit for his period of incarceration in Bexar County when the district court entered its judgment of conviction in this case, *see Ferrin v. State*, Nos. 05-98-02010—02011-CR, 1999 Tex. App. LEXIS 9611, at *2 (Tex. App.—Dallas Dec. 30, 1999, no pet.) (not designated for publication) (providing that if person is confined in another jurisdiction, he is entitled to credit "if a detainer or hold is lodged against him by the first jurisdiction" (citing *Ex parte Bynum*, 772 S.W.2d 113, 114 (Tex. Crim. App. 1989))), and that the possibility of obtaining

14

credit for his time served in Bexar County might have framed his attorney's decision to not seek a dismissal of the charges.

Based on the record before this Court and given the unique circumstances presented, we cannot conclude that Robinson has demonstrated a failing on the part of his pretrial counsel so egregious that no effective attorney would have engaged in it.

In addition to challenging the representation provided by his pretrial counsel, Robinson also contends that the lawyer appointed to his case after his pretrial counsel withdrew was ineffective. First, Robinson contends that his trial counsel improperly moved for a directed verdict regarding an alternative charge for theft. As summarized above, Robinson was convicted of the state-jail felony of stealing property with a value between $1,500 and $20,000, but the indictment originally alleged an alternative theft charge stating that Robinson stole property that was worth less than $1,500. *See* Tex. Penal Code § 31.03(e)(4)(D). Although the alternative charge did allege that the property stolen had a value that was worth less than the amount alleged for the offense in which he was convicted, the alternative charge also contained an additional allegation that Robinson had previously been convicted of theft six times. Accordingly, the alternative charge was a state-jail felony just like the offense for which he was convicted. *Compare id.* § 31.03(e)(3) (specifying that theft is class A misdemeanor if value of property is between $500 and $1,500), *with id.* § 31.03(e)(4)(D) (providing that offense is state-jail felony if value of property is $1,500 or less and if defendant has previously been convicted of theft on two or more occasions).

When moving to strike the alternative charge, Robinson's trial counsel explained that the evidence regarding the value of the property at issue demonstrated that the property was

15

worth more than $1,500. After considering the arguments of both parties, the district court struck the alternative charge from the indictment. In response, the State asked the district court to order Robinson's trial counsel to not make arguments that the value of the property at issue was worth less than $1,500, and the district court granted that request. In light of the preceding, Robinson contends that by moving to strike the alternative charge and by seemingly agreeing that the evidence was sufficient to support the primary offense charged, his trial counsel "barred himself from disputing the evidence" and from requesting a lesser-included offense instruction under the alternative charge. See Tex. Code Crim. Proc. art. 37.09 (defining lesser included offense as, among other things, offense established by same or less than all facts required to establish commission of charged offense). Accordingly, Robinson contends that his trial attorney's actions were per se ineffective and abdicated his duty to provide counsel.

As with Robinson's claims regarding his pretrial counsel's performance, the record in this case does not provide any guidance regarding Robinson's trial attorney's decision to request that the alternative charge be struck. Moreover, although the alternative charge may not have technically been a lesser-included offense, given that the alternative charge only required proof that the property stolen was worth less than $1,500 rather than between $1,500 and $20,000, the decision to forgo the alternative charge might have been based on an all-or-nothing strategy that courts have upheld in the context of lesser-included offenses. Cf. Okonkwo v. State, 398 S.W.3d 689, 697 (Tex. Crim. App. 2013) (explaining that trial strategy might involve decision to not request lesser-included charge); Tolbert v. State, 306 S.W.3d 776, 781 (Tex. Crim. App. 2010) (discussing all-or-nothing strategy); Turner v. State, No. 03-12-00285-CR, 2014 Tex. App. LEXIS 8706, at *20 (Tex.

16

App.—Austin Aug. 8, 2014, pet. ref'd) (on reh'g) (mem. op., not designated for publication) (stating that in absence of record evidence regarding counsel's strategy, court cannot speculate as to whether strategy existed and that "[t]he failure to request a lesser-included-offense instruction, without explanation for trial counsel's decisions, does not compel a conclusion that trial counsel's performance was deficient"); *see also Menefied*, 363 S.W.3d at 592-93 (explaining that direct appeal is generally inadequate vehicle for presenting ineffectiveness claim regarding alleged failure to request lesser-included instruction); *Wood v. State*, 4 S.W.3d 85, 87 (Tex. App.—Fort Worth 1999, pet. ref'd) (noting that failure to request lesser-included instruction can constitute ineffective assistance but that failure to request might also constitute sound trial strategy). In addition, under the alternative charge, the State would have had to prove that Robinson had previously been convicted of theft on two or more occasions. By having the alternative charge struck, Robinson's attorney effectively prevented the State from emphasizing to the jury during its closing argument that Robinson had been previously convicted of multiple thefts.

Second, Robinson contends that his trial counsel was ineffective by failing to cross-examine Rodriguez regarding her knowledge about the number of cartons in the box, the method one could use "to determine the number of cartons present in the box besides the ledger, the reliability of the ledger, or other possibilities for how those cartons were unaccounted for." Moreover, Robinson asserts that although Rodriguez testified that she made the ledger on the night of the alleged theft, his attorney failed to cross-examine the witness regarding why the ledger had a different date and time stamp on it.

As a preliminary matter, we note that Robinson's trial counsel cross-examined Rodriguez regarding her recollections of the night in question and regarding the contents of the box

17

and emphasized repeatedly that she did not actually see Robinson steal the box. Moreover, in her testimony, Rodriguez explained how she determined the number of cartons in the box that was stolen. In addition, although Robinson's trial attorney did not question Rodriguez regarding the alleged inconsistency between her testimony stating that she prepared the ledger on the night of the offense and the date reflected on the ledger, the date reflected on the ledger simply revealed that the ledger was prepared or printed on the morning after the offense was alleged to have occurred instead of on the night of the offense. Furthermore, as with Robinson's other claims of ineffectiveness, the record does not reveal the motivations of his trial attorney.

In light of the preceding, we cannot conclude that the failure to cross-examine Rodriguez in the manner suggested by Robinson demonstrated a failure on the part of his trial counsel so egregious that no effective attorney would have engaged in it. Cf. Miniel v. State, 831 S.W.2d 310, 324 (Tex. Crim. App. 1992) (explaining that decision to not cross-examine witness can be wise decision and concluding that failure to cross-examine co-defendant in light of totality of representation did not constitute ineffective assistance).

Finally, Robinson urges that his trial attorney was ineffective because the attorney failed to adequately investigate the evidence in this case. Specifically, Robinson contends that had his attorney more thoroughly investigated this case, he would have discovered that 36 cartons would not have fit inside the box that was stolen. As support for this argument, Robinson notes that Parramore was charged with the same two counts, urges that the trial court in Parramore's case issued a directed verdict for the count alleging theft of an amount that was less than $1,500, and mentions that Parramore's trial counsel argued that "if the jury couldn't cou[n]t 36 boxes, they could not convict."

18

However, the information regarding Parramore offered by Robinson as support for his argument is outside the record of this case. Even so, the fact that Parramore's trial attorney might have chosen to engage in a trial strategy that was not employed in this case does not compel a conclusion that Robinson's trial attorney was ineffective, particularly where, as here, the record does not contain any information regarding his attorney's motivations for allegedly failing to more thoroughly investigate the capacity of the box. *Cf. Castruita v. State*, No. 03-10-00419-CR, 2012 Tex. App. LEXIS 5709, at *8 (Tex. App.—Austin July 12, 2012, no pet.) (mem. op., not designated for publication) (explaining that fact that attorney "could have chosen a different trial strategy is not enough to show that his assistance was ineffective"). Moreover, other than speculating about the capacity of the stolen box, Robinson has not presented any information establishing that a more thorough investigation of the box would have in fact revealed that 36 cartons could not fit inside the box. In addition, it is not clear from this record that the box that was stolen was ever recovered.

Accordingly, we cannot conclude that the alleged failure was so egregious that no effective attorney would have engaged in it.

Although we need not consider the matter further, we note that an attorney's effectiveness is based on the totality of the representation. *See Frangias*, 450 S.W.3d at 136. During jury selection for Robinson's trial, Robinson's trial attorney emphasized the State's burden to prove the elements of the offense alleged, questioned the panel members regarding their ability to serve on the jury and to make a decision based only on the evidence presented, explained a defendant's right to not testify, asked the panel members about whether they would hold a defendant's decision to not testify against him, and moved to strike various panel members for cause. Prior to trial, his

19

trial attorney moved to suppress portions of Robinson's interview with the police on the grounds that those portions were not relevant and were more prejudicial than probative. Moreover, his attorney successfully moved to exclude the admission of an offender identification card belonging to Robinson that was found in Robinson's wallet at the scene of the crime.

In his opening statement during the guilt or innocence portion of the trial, Robinson's attorney explained that the evidence will show that another individual, Parramore, stole the cartons, emphasized that Robinson is presumed innocent, discussed the State's burden to prove its case beyond a reasonable doubt, explained that Robinson might not testify, and urged the jury to return a verdict of not guilty after considering the evidence. During the trial, Robinson's attorney objected to the fact that the State had not submitted a copy of the ledger made by Rodriguez prior to seeking to admit it as an exhibit. In addition, he cross-examined Rodriguez and the State's other witnesses, including Officer Wahrmund. Regarding the jury charge, his attorney objected on the ground that there was no evidence that Robinson intended to steal cigarettes. During his closing argument in the guilt or innocence phase, Robinson's attorney argued that the State had failed to meet its burden and that there was no evidence that Robinson intended to or actually did steal any property; on the contrary, his attorney asserted that the evidence showed only that Parramore stole the box.

In the punishment phase of the trial, Robinson's attorney successfully objected to a portion of Officer Wahrmund's testimony as speculation and cross-examined Officer Warhmund. Moreover, Robinson informed his counsel of his desire to testify, and when his attorney called him to the stand, his attorney pointed out that he had freely entered pleas of true to the enhancement allegations and previously admitted responsibility for those prior offenses by pleading guilty to those

charges. In addition, his attorney asked him if he had a history with drug use and if that history resulted in the prior offenses, and Robinson testified that his history of drug abuse played a major part in his prior offenses. During his closing argument, his attorney asserted that the value of the property stolen was on the low end of the crime charged, reminded the jury that Robinson pleaded true to the prior offenses, differentiated the offense at issue from other felonies with similar punishment ranges, and asked the jury to remember the offense at issue when deciding the appropriate punishment.

For all of these reasons, we overrule Robinson's second issue on appeal.

## CONCLUSION

Having overruled all of Robinson's issues on appeal, we affirm the district court's judgment of conviction.

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed: July 22, 2015

Do Not Publish